## BLAIR vs. PERPETUAL INSURANCE COMPANY.

1. A corporation has power to make any contract authorized by its charter, in a foreign government, if such contract be not prohibited by that government.

2. A corporation can only exercise the powers expressly granted by its charter, or necessary to carry out some express power.

3. A corporation created for insuring property, has no power to engage in banking business.

4. Although the powers conferred on a corporation by its charter cannot be affected by legislation, yet corporations in other respects are subject to the laws, and their contracts in violation of the laws are voidable, or may be made void by law.

5. The liability of a surety is not to be extended by implication beyond the terms of his contract.

6. A surety for one as agent of a corporation, is limited to such acts as the corporation is authorized to require of its agent.

7. The St. Louis Perpetual Insurance Company has no right to engage in banking—and where one became surety for the fidelity of an agent of such corporation, he was not bound for an embezzlement by the agent of the funds of the corporation, while such agent was engaged in the business of banking for the corporation.

8. A surety is not bound by the admissions of his principal, unless made in the course of his business. A surety for an agent is not bound by his admissions after being discharged from his agency.

## APPEAL from St. Louis Circuit Court.

POLK, *for Appellant, insists :*

1. The pleas retained by defendant, and to which the plaintiff below demurred, particularly the 5th and 8th, were good, and consequently the demurrer thereto ought to have been overruled.— Acts of General Assembly, sess. of 1836–7, p. 215 and 189; sections 5 and 10 of the charter, Acts of 1842–3, p. 20, sec. 4.

2. The appellee's declaration is bad; it no where expressly avers that Homans accepted the office and appointment of agent of the appellee. Such acceptance is at most only matter of inference, from the facts stated in the declaration. Serre, *et al.* vs. Wright, 6 Taunt, 45; (1 Eng. C. L. R., 304;) Jones vs. Williams, Doug. 214.

3. The account stated between Homans and the appellee was incompetent evidence against Blair, who was Homan's security, and should have been rejected by the court. It was not made by Homans during the time and in the course of the discharge of the duties, for the faithful performance of which by Homans, Blair had bound himself; but after he had been suspended by the appellees in the discharge of those duties. See Hill & Cowen's notes to Phillips' Ev., p. 669, note 458, and the authorities there cited; Goss vs. Wattington, 3 Brod. & Bing., 132; (7 Eng C. L. R , 379;) Whitmarsh, *et al.* vs. Gifford, 8 Barn. & Cres., 556; (15 Eng. C. L. R., 295;) Middleton vs. Milton, (10 Barn. & Cres., 317;) Hotchkiss vs. Lyon, *et al.*, 2 Blackford's Indiana R., 222; Shelby vs. Governor, 2 Blackford's Ind. R., 289; Rial vs. Bick, 3 Blackford's Ind. R., 242; Evans vs. Beattie, 5 Esp., 27; Bacon vs. Chesney, 1 Stark, 192.

4. The appellee, when he first closed his case, was not entitled to recover, and the court below ought to have given the instruction prayed by the appellant to that effect.

5. The court below committed error, to the prejudice of the appellant, by allowing the appellee, after having once closed his case, and after the court had instructed the jury in matters of law upon the case thus made, to re-open his case, and to recall and re-examine his witness, Ranlett.

6. The court below erred in refusing to give the instruction asked by the counsel of appellant, upon the close of all the testimony in the case.

*Blair* vs. *Perpetual Insurance Company.*

For authorities in support of this point, and the instruction to which it refers, see 2 Leigh's R., 157; S. P. Tindall vs. Bright, Minor's R., 103; Pauling, *et al.* vs. U. S., 4 Cranch, 219.

7. The court below committed error, prejudicial to the appellant, in the instruction which it gave, at its own motion, on the close of the evidence in the case.

8. The judgment rendered and entered up in this case is erroneous. ˙ See record, page 16; Rev. Code, title Penal Bonds, p. 782, sec. 6 and 8.

9. The court below ought to have set aside the verdict and granted appellant a new trial, not only because of the errors in law committed by it to the prejudice of the appellant, but also because of what is contained in appellant's affidavit, filed in support of his motion for a new trial. ˙

GANTT, *on the same side, insists :*

1. That the declaration was bad, for two reasons; first, for not averring that Homans *accepted* the office of agent of plaintiff; (6 Taunt., 47) and secondly, for not stating how the moneys embezzled, &c. by Homans had come to his hands. Douglass Jones vs. Williams, page 214, (top paging) 8 T. R., 243, top page, overrules the above; and so judgment on the demurrer should have been for defendant.

2. That the pleas demurred to, especially the 5th and 8th, were good, constituted a bar to the action of the plaintiff, and the demurrer to them should have been overruled. Said pleas were good on grounds independent of statutory enactment. Petrie vs. Honnay, 3 T. R., 418; Steers vs. Lashley, 6 T. R., 61; 2 Bos. & Pul., 373; 3 Taunt., 10; 4 Taunt., 165; 3 Ves., 373; Morck vs. Abel, 3 B. & B., 35; 5 Mass., 395; Howson vs. Hancock, 8 T. R., 575; 7 T. R., 630.

Secondly, they were in direct conformity to the law of the State. Sess. Acts of 1842-3, page 20, sec. 4, title Banking, act of incorporation of plaintiff; Sess. Acts of 1836-7, sec. 5, 11; Rev. Code of 1845, title Banking, sec. 7 and 10, page 167 and following.

3. That the court erred in permitting the accounts stated between Homans and Perpetual Insurance Company to go to the jury in this action. 5 Esp., 26, 27; 3 Harr. & McH., 242; 3 Yeates, 128; 2 Blackford's Reps., Hotchkiss vs. Lyon, 222; ib. Shelby vs. Gov. of Ind., 26; 1 Dana, 177; Davis vs. Whitesides; Cluggage vs. Swan, 4 Binn., 150; 6 Binn., 1, 2; Longenecker vs. Hyde, 2 J. J. Marsh., Thomas vs. Thomas, 60; Price vs. Thornton, *et al.*, 10 Mo. R., 135.

4. That the circumstance of there being no plea denying the embezzlement, &c., makes no difference as to the character of the testimony required for fixing the amount of damages recoverable by the plaintiff. Even in case of no plea and judgment by default, an enquiry was necessary. Without testimony to establish this amount, the plaintiff could only have had judgment for nominal damages, if indeed he could have had judgment for any damages at all—even one cent. See Rev. Code of 1844, page 815, sec. 42; ib, page 782, sec. 7, article Penal Bonds; and see Goss vs. Wattlington, 3 Brod. & B., 132, where there was judgment by default, and testimony like the present excluded.

5. That the court below erred in permitting plaintiff to recall his witness after he had closed the case on his part, and give further testimony after the defendant had prayed the opinion of the court on the case made. ˙

6. That the court erred in refusing to instruct the jury as prayed by the defendant, after offering the testimony of Harrison.

7. That the instruction given to the jury by the court of its own motion, was erroneous in this: that it made to them a suggestion to indulge a presumption not warranted by the evidence disclosed in the cause. Hollister vs. Johnson, 4 Wend., 639; Haine vs. Davy, 4 Ad. & El., 899; and also in withdrawing matters of fact from the jury.

8. That upon the finding of the jury, only nominal damages could have been adjudged to the plaintiff, and that the court ought to have granted the motion of the defendant to instruct the clerk to enter up judgment accordingly. Rev. Code of 1845, title Penal Bonds, sec. 6 and 8, p. 782.

9. That for the reasons assigned, the court below should have set aside the verdict and granted a new trial; and for not doing so, the judgment of the court below should be reversed.

GAMBLE & BATES, *for Appellee, insist:*

1. The demurrer to the pleas was rightly sustained; for the charter is not forfeited by the commission of the acts stated in the pleas, but can only be forfeited by the will of the sovereign, in a proceeding instituted for that purpose. Angel & Ames on Cor., p. 507, 664–5.

2. The court rightly refused the instruction moved by defendant, "that upon the evidence given by the plaintiff in the case, the plaintiff is not entitled to recover," because the record not only does not show a total lack of testimony on the part of the plaintiff, but on the contrary shows a good case well proved.

3. The court committed no error in allowing the plaintiff to recall the witness, Ranlett, and examine him touching a demand made on Homans for the balance due. 7 Mo. R., 115; 8 Mo. R., 26, Brown vs. Barnes.

4. The court committed no error in refusing to give the instruction, No. 3, as moved by the defendant.

5. The final instruction given by the court to the jury, No. 4, was legal and right.

6. Independently of the instructions, the plaintiff, on the face of the record, was entitled to the verdict. There is no plea to the breach; *non est factum*, without oath, admitted the bond; and the plea of *fraud* was for the defendant to prove affirmatively. The breach was traversable, and not traversed, and therefore admitted; and the breach alleges that Homans had applied the $3,000 to his own use. The money in the hands of Homans was never employed in the alleged illegal business: the worst that can be said is, that the plaintiffs *intended* to misuse the money, but Homans prevented them by converting it to his own use.

7. Besides, no demand upon Homans was necessary, and so the instruction to the jury on that point was wrong.

Even in trover, if the defendant come lawfully into possession, and afterwards convert the goods, no demand is required to precede the action. 3 Mo. R., 270, Himes vs. McKinney.

SCOTT, J., *delivered the opinion of the Court.*

This was an action of debt on a bond in the penalty of $2,000, by the appellee (plaintiff below) against the appellant, as surety of J. J. Homans, who was agent for the appellee. The condition of the bond, after reciting that Homans had been appointed agent for the St. Louis Perpetual Insurance Company, provided that it should be void if the said Homans should well and truly perform all the duties of the said appointment, as the same should be prescribed by the Board of Directors thereof, from time to time; and should faithfully preserve and account for all the moneys of the said company, which were or should thereafter come into his hands by virtue of his office, as might be required by the bye-laws or authority of the Board of Directors of said Company. The declaration alleged that on the 1st May, 1844, said Homans, as such agent of the plaintiff, had received, and there had come to his hands by virtue of said

office, of the moneys of the plaintiff, the sum of $3,000, which he did not faithfully, honestly, and fully preserve and account for, as he was required to do by the authority of the Board of Directors; but, on the contrary, misapplied and disposed of the same to his own use. The bond was dated 1st November, 1843.

There were ten pleas to the action—*non est factum*, and nine special pleas; the 2nd, 5th, 8th and 10th of which will only be noticed, as the others, after being ruled bad on demurrer, were stricken out by consent.

The 2nd plea in substance avers that Homans, the agent of the company, was employed out of the limits of this State, in New Orleans.

The 5th and 8th, which are nearly the same, substantially aver, that before and since the breach of the condition in the declaration mentioned, the plaintiff was and had been engaged in the business of banking— that is to say, in receiving from individuals money on deposit and keeping an account therefor and thereof with such depositors, after the manner and fashion of bankers; in using the money so deposited as a fund for discounting such promissory notes, and buying such bills of exchange, as were offered to and approved by said plaintiff, and in buying and selling bills * of exchange, for the purpose of clearing the profits and emoluments incident to such business; which said business, in all its said branches, was illegal and unlawful to said plaintiff, and foreign to and a misuser of the objects of the charter of incorporation of said plaintiff, and the powers granted thereby; and with a view of carrying on said business more extensively, that the said Homans was sent to New Orleans, where he remained from the 1st November, 1843, until the 1st May, 1844, in said employment, and that whilst so employed, the breach in the declaration mentioned was incurred. The 10th plea alleges that the bond was obtained by fraud and covin. Issues were taken on the 1st and 10th pleas, and demurrers were filed to the 2nd, 5th and 8th, which were sustained. There was a judgment for the plaintiff for $2,000, which was entered in this manner: "Therefore it is considered by the court that the said plaintiff recover of the said defendant the damages aforesaid by the jury assessed," &c.

On the trial, the bond was read in evidence, and an account shown to be in the handwriting of Homans, by which it appears that he, on the 31st May, 1844, acknowledged himself indebted to the plaintiff in the sum of $3,000. The reading of this paper was excepted to by the defendant.

The plaintiff having closed his evidence, the defendant moved the court to instruct the jury that the plaintiff could not recover without

proving a demand on Homans for the balance claimed, and that on the evidence the plaintiff was not entitled to recover. The court gave the first, but refused the last of these instructions. The court then permitted the plaintiff to give evidence touching the demand made on Homans.

There was some evidence under the plea of fraud, and some instructions growing out of it, which it will not be necessary to notice.

An objection was taken to the plaintiff's declaration, that it did not aver that Homans had accepted the office of agent of the plaintiff, and that it did not allege how the moneys not accounted for by Homans came to his hands, and the cases of Serre vs. Wright, 6 Taun., 49, and Jones vs. Williams, Doug., 214, were cited in support of these objections. As to the defect that it does not appear in what manner the moneys came to the hands of Homans, it may be observed that the case of Jones vs. Williams, cited in support of the objection, is expressly overruled by the case of Barton vs. Webb, 8 T. R., 455. The appointment of Homans to an agency was no office, and the averment in the declaration that as agent he received the sum of money not accounted for, is a sufficient allegation that he did enter upon the duties of his appointment.

The demurrer to the second plea was rightly sustained. It cannot be maintained that a corporation is incapable of transacting business beyond the territorial limits of the government by which it is created. In the case of the Bank of Augusta vs. Earle, 13 Pet., 521, the question of the right of a corporation to make contracts in another State than that of its creation, received a full examination by the Supreme Court of the United States, and the result was declared in the clear and satisfactory opinion of the Chief Justice. It was determined that a corporation keeping within the scope of its general powers, and having authority by the law of its creation to make the contract, could contract in foreign governments, if such contract was not prohibited by the laws of that government. The doctrine of this case had been previously declared in several of the States, and may be considered as settled.

The question presented by the demurrer to the 5th and 8th pleas, is an important one, and merits full consideration. By the common law, every corporation had certain incidents annexed to it, which arose and adhered to it by the act of incorporation. An enumeration of these incidents is unnecessary here, as they are to be found in all the books on this subject. The incidental powers may be and are frequently restrained by the terms of the charter. When they are not thus restricted, they can only be exercised for the purpose of carrying into effect the ends for which the corporation was designed. It is a well settled principle that

a corporation has no other powers than those which are specifically conferred upon it, and those which are necessary to carry into effect the powers expressly delegated. In the case of Beatty vs. Lessee of Knowler, 4 Pet., 152, it was said by the Supreme Court of the United States, "the exercise of the corporate franchise being restrictive of individual rights, cannot be extended beyond the letter and spirit of the act of incorporation." A corporation and an individual do not stand upon the same footing in regard to the right of contracting. The latter may make all contracts which in the eye of the law are not inconsistent with the interests of society; whereas, the former, being created for a specific purpose, must look to its charter, which is, as it were, the law of its nature, to ascertain the extent of its capacity. It can not only make no contract forbidden by its charter, but it can only make those which are necessary to effectuate the purposes of its creation. "If the object of the corporation is to insure property, it cannot exercise the power of acting as a banking institution." Angel & Ames on Corporations, 66.

Although it has been settled by the courts of the United States that acts of the State Legislatures divesting corporations of any right conferred by charter, as a right to make particular contracts, are void, as impairing the obligation of the charter, which is a contract within the meaning of the Federal Constitution; yet it is clear, that except so far as they are privileged, by the instrument of their creation, corporations, like individuals, are subject to legislative action; and all contracts made by them, in violation of the laws of the land, are voidable or may be made void by legislative enactment. Angel & Ames, 795. The act incorporating the plaintiff gave it the same powers and subjected it to the same liabilities as were conferred and imposed on the Farmers' & Mechanics' Insurance Company of St. Louis. Sess. Acts '36-7, page 215–16. The Farmers' & Mechanics' Insurance Company was authorized to make all kinds of insurances on goods, merchandize, and lives, and all other kinds of insurance; to lend money upon respondentia and bottomry; to lend its surplus.and unemployed money or capital at interest, and to insure itself against losses upon its own insurances. The said company was prohibited from employing any part of its funds in buying and selling goods, wares and merchandize, or any commodity whatever, and any brokering operation or business. Ibid, pages 190–1. The 4th section of the act of February 28th, 1843, prohibited all corporations within the limits of this State from exercising any banking privileges, either by issuing notes or any species of any paper currency whatever, or by receiving money on deposite, or by discounting notes, bills or bonds;

or by dealing in exchange; or by lending and collecting, or by doing any other banking business whatever. Admitting that these prohibitions, so far as they attempted to arrest the exercise of any franchise previously conferred by the General Assembly on the plaintiff, were inoperative and void, as violating the prohibition on the States not to impair the obligation of contracts; yet so far as they steered clear of this objection, they were clearly obligatory and binding on all corporations. From the above enumeration of the powers conferred on the plaintiff, it is obvious that it had no authority to engage in the business in which Homans is alleged by these pleas to have been employed. New York Fire Ins. Co. vs. Ely, 2 Cow., 678.

In the case of Miller vs. Stewart, 9 Wheat., 702, it is said "nothing can be clearer, both upon principle and authority, than the doctrine that the liability of a surety is not to be extended by implication beyond the terms of his contract. To the extent, and in the manner, and under the circumstances pointed out in his obligation, he is bound, and no further. It is not sufficient that he may sustain no injury by a change in the contract, or that it may even be for his benefit. He has a right to stand upon the very terms of the contract."

The undertaking of the surety is to receive a strict interpretation, and is not to be extended beyond the fair scope of its terms. It has been held, that if a person engages as surety to a particular individual, the engagement is understood to be only to that individual, and it ceases if he takes a partner, or it will not extend to matters in which his partner is interested. Wright vs. Russell, 2 Black., 934. So a surety for the fidelity of a clerk is not liable, in respect of a breach of trust, upon an employment of the clerk by the trader's executors. Barker vs. Parke, 1 Term. So if a person engage as surety to several individuals, the engagement is understood to be to all of them collectively and jointly, and if any of them die, it will not be available in respect of transactions afterwards by the survivors. Weston vs. Barton, 4 Taun., 673. So if the surety's engagement relates to a particular office, it extends to such things as were included in the office when the engagement was entered into. Story on Contracts, 353. So if a person engage as surety to a particular individual, the engagement is understood to extend to the acts of that individual alone, and will not continue if he take a partner. Billair vs. Ellsworth, 3 Camp., 52. In the case of Leigh vs. Taylor, 7th Barn. & Cres., which was an action upon a bond against the defendant, as surety of Hutton, who, it was recited, had been duly elected overseer, and the condition was for Hutton's accounting for all sums which should

ome to his hands by virtue of his office as overseer. It appeared among the items in his account, and for which he was indebted, there was one for money which he had borrowed for parochial purposes, without the direction of the parishioners. The court held the sum ought not to be charged against the surety, because it was no part of the duty of an overseer to borrow money. In the case of Dedham Bank vs. Chickering, 4 Pick., 314, the court say, the contract of the sureties is only for the faithful performance of those trusts that properly and legally belong to the cashier of the Bank. But in respect to bills illegally issued by the Bank, the surety was not responsible for the fidelity of the cashier in respect to these, because he was not acting within his duties as cashier, but as an agent in an unlawful traffic. The directors cannot require a duty of a cashier not belonging to his office, and thereby throw a burden upon a surety beyond the meaning of his contract.

When Blair was solicited to become the surety of Homans, he would naturally look to the charter of the plaintiff, in order to ascertain the extent and nature of the powers which it could exercise. These would inform him of the character of the obligation he was contracting. It could not be supposed that he would make himself liable for the conduct of Homans, in whatever employment he might be engaged. An individual may be willing to guaranty the fidelity of another in one employment, when he would be very far from doing it in an employment of a different nature. An undertaking for the fidelity of another as agent for a corporation, is limited to such acts as the corporation, by its charter, may lawfully require an agent to perform. The liability of the surety could only attach whilst the agent was employed in the discharge of duties which the charter gave it a right to impose.

The admission in evidence of the account rendered by Homans, in which he charges himself with the amount for which the action is brought, brings up the question, how far the admissions of a principal will affect his security. In the cases which have arisen on this subject, the enquiry has been whether the declarations were made, in the course of the business for the performance of which the surety is bound, so as to become a part of the *res gestæ*. If the declarations are made under such circumstances, they are binding on the surety; otherwise, not. The rule being, that a surety is bound for what his principal does, and not for what he might say he had done, therefore, if one is liable on a bond as surety for the good conduct of another as clerk, it has been held that, in an action against the surety, the declarations of the principal, made after his dismissal, were not evidence against him, though it would be otherwise

in regard to entries made by the clerk in the course of his employment. Smith vs. Whittingham, 6 Carr & Payne, 78. As there was no plea denying the truth of the breach of the condition of the bond assigned in the declaration, the plaintiff was entitled to a verdict without proof of the admission contained in the account given in evidence.

There was no error in permitting the plaintiff to give evidence of a demand, after he had closed his case and after the instruction of the court. The fact that the suit was against a surety, could surely make no difference: it should not in the least have influenced the exercise of the discretion of the court. This subject has been so frequently before this Court, and so repeatedly has it refused to interfere with the discretion of the Circuit Courts in relation to it, that it would seem useless any longer to raise such points. If evidence comes in out of its order on a trial, and the judgment should for that cause be reversed, will it not on the second trial be introduced in order and bring about the same result as in the first trial?

The judgment was improperly entered in this case. The statute concerning penal bonds is express that the judgment shall be rendered for the penalty of the bond, as in an action of debt, with an award of execution for the damages assessed. As the judgment will be reversed for other causes, this matter would not have been noticed but for the fact that the court, after its attention had been called to the error, which it does seem is very apparent, refused to correct it, when the record was in its power.

The other Judges concurring, the judgment will be reversed and the cause remanded.