CENTERVILLE STATE BANK v. NATIONAL SURETY CO. et al.

District Court, D. Kansas, Third Division.
July 3, 1928.

No. 754.

1. Insurance ⬳95—Where surety's agent negotiated bond covering himself as president of bank, surety was not chargeable with agent's knowledge of subsequent change in his position from president to cashier.

Where bank president, principal named in fidelity bond, was also agent of bonding company, and as such agent renewed the bond after his position in the bank was changed from president to cashier, *held*, bonding company was not chargeable with its agent's knowledge of his change in position in the bank.

2. Insurance ⬳430—On issue whether surety of bank president is liable for his acts as cashier, federal court should look in turn to bank's by-laws, laws of state, and general principles.

On issue whether surety of bank president is liable for his acts as cashier, federal court must look to by-laws of bank, and in their absence to laws of state, and then to general principles of law of corporations, defining duties of the respective offices.

3. Principal and surety ⬳98—Obligation of officer's surety is not binding after duties of office are changed.

Where duties of officer are changed or augmented, obligation of officer's surety is no longer binding.

4. Insurance ⬳430—Bank president's surety held not liable for his acts as cashier.

Bank obtaining fidelity bond naming its president as principal *held* not entitled to recover thereon for acts of its president, after his position was changed to that of cashier.

5. Insurance ⬳430—Bank held estopped to assert that it was one-man bank, and that duties of president and cashier were identical as affects liability on fidelity bond (Rev. St. Kan. 1923, 9—109).

Where principal in fidelity bond was removed from office of bank president to office of cashier, bank seeking to recover on bond was estopped as against surety to assert that it was in fact a one-man bank, and that duties of named principal were the same in either case, particularly in view of Rev. St. Kan. 1923, 9—109.

6. Insurance ⬳646(6)—Plaintiff in action on fidelity bond must establish exact fiduciary relation specified in bond.

Plaintiff in action on fidelity bond must establish the exact fiduciary relation and capacity specified in the bond, or it fails to make out a case.

At Law. Action by the Centerville State Bank against the National Surety Company and another. Judgment for defendants.

John A. Hall, of Pleasonton, Kan., and A. M. Keene, of Ft. Scott, Kan., for plaintiff.

Henry L. Jost, of Kansas City, Mo., for defendants.

POLLOCK, District Judge. This is an action at law brought by plaintiff to recover from defendant on a fiduciary bond. The amended petition seeks recovery of six items, aggregating $4,729.50. The demand in the original petition was for an aggregate of only $4,095.30. Other items not originally declared upon were added by the amended petition.

While it is seriously contended, even in the event a recovery can be had by plaintiff in any amount certain of the items declared upon in the amended petition cannot be allowed to plaintiff; however, as by reason of the defense interposed, it is the insistence of defendant there can be no recovery by plaintiff in any amount on the bond, an orderly course of procedure would suggest, first, a determination of the question of any liability on the part of defendant to plaintiff on the bond; second, if it be determined there is a liability on the part of defendant to the plaintiff on the bond, then the amount of such liability.

By way of defense, the defendant says, first, there is no liability on the bond, for that, when the bond was first made the prin-

cipal in the bond was the president of plaintiff's bank. That application for the bond was made to indemnify the bank against such acts of its then president, Lester C. Brownback, as president of the bank done in that capacity amounting to larceny or embezzlement from June 1, 1919, during the life of the bond, and that thereafter, and on or about January 10, 1923, and before the loss by the bank of any of the items sought to be recovered occurred, Brownback ceased to be the president of the bank, another, one Dexter was elected president of the bank and Brownback was by the directors of the bank made cashier, and that this was done, and he was continued in this office of cashier without the knowledge or consent of the defendant company during all the times at which the losses of the bank occurred. Therefore defendant says it is not liable for any act of Brownback as president of the bank done by him not in the capacity of president of the bank, but in his capacity as cashier of the bank.

By way of response to this defense the plaintiff admits it to be true Brownback as principal in the bond made the bond as president of the board of directors of the bank and caused the defendant company to become surety thereon, and without the knowledge or consent of the defendant company he was by the bank removed from that office and another was made president in his place and stead. And, furthermore, that he was then made cashier of the bank, and while he was acting as cashier of the bank the losses occurred to the bank. But plaintiff contends this fact does not relieve defendant from liability on the bond for two reasons, namely: (1) Because the bank was a one man bank, and that there was no difference whatever between the duties actually performed by Brownback as cashier and those performed by him while president of the bank; (2) that Brownback, during all the time the bond was in force or existence, and its many yearly renewals, he, Brownback, was the agent of defendant company in the town of Centerville, and hence defendant, through its said agent, the then principal in the bond, knew he had ceased to be president of the bank and became its cashier.

[1] This contention raises a serious controversy in this case. As there can be no question on this record, but that defendant had no actual knowledge or notice of the change of office of Brownback in the bank, and as the renewals of the contracts were made by Brownback as president of the bank, as principal, after the change in office had been made, it

must be held notwithstanding Brownback's agency for defendant in the town of Centerville, as he was acting in two different capacities in the making of the contract of indemnity, his knowledge would not bind defendant as agent acting in an advisory capacity. I take it to be too well settled to require the citation of authorities on this proposition.

[2-4] The question presented, then, is as to the liability of defendant 'to the bank for such acts as amount to larceny or embezzlement of the moneys or property of the bank done by Brownback as and while he was acting for the bank in the office of and in the capacity of its cashier on a fiduciary bond running from defendant to the bank, wherein the bank was insured against his criminal acts acting in the capacity of its president.

There are no by-laws of the bank in existence so far as the record in this case disclosed defining the duties of a president and cashier of the bank. We must, therefore, I think, look to the laws of the state of Kansas under which the bank was organized to define the duties devolving upon the respective officers of such institution as president and cashier, if any such statutes are found defining the same. In the absence of such statutes it must be presumed the contract was made in view of the general principles of the law of corporations defining the duties of the president of the board of directors or the cashier of the company, for that the nature of the duties devolving upon one insured in an official capacity must have been in the minds of the parties as a matter of law when the contract was entered into, and in case the duties of the office were by the change augmented or changed the obligation would no longer be binding.

While the bank pleads it was a one-man bank and that Brownback as president was this one man, it is thought if this be true it would only show the bank was operating in direct violation of the law of its existence, for section 9—109, R. S. Kan. 1923, provides as follows:

"Board of Directors; Officers and Employees. The affairs and business of any banking corporation doing business under this act shall be managed and controlled by a board of directors, not less than five nor more than twenty-five in number, who shall be selected from the stockholders at their annual meeting, which shall be held on any day between the first and tenth days of January of each year, and in the manner provided in the general corporation act. A majority of such directors shall be residents of the county or adjoining counties to that in

which the bank is located. The board shall designate one of their number to act as president and one as secretary, and may designate one or more of their number to act as vice president or vice presidents, and shall select from among the stockholders a cashier. Such officers shall hold their offices for the term of one year and until their successors are elected and qualified, and before entering upon the discharge of their duties shall take and subscribe to an oath that they will, so far as the duty devolves upon them, diligently and honestly administer the affairs of such) bank, and will not knowingly or willingly permit to be violated any of the provisions of the law, and that they are the owners, in good faith and in their own right, of the number of shares of stock subscribed by them or standing in their names on the books of the bank; and no person shall hold the office of director or cashier or managing officer of any bank unless he owns, in his own name and right and in good faith, at least five hundred dollars in stock, which shall not be pledged or in any way hypothecated."

[5] While the plaintiff has offered evidence in this case tending to show the plaintiff bank at all times after the making of the indemnatory contract in dispute was operated as a one-man institution for the purpose of showing the duties of Brownback, as president, and Brownback, as cashier, were the same identical duties; hence the risk assumed by defendant company was not increased by the change in office from president to cashier. I am of the opinion in this case the plaintiff is estopped from so showing unless such fact, if true, had been made known to defendant company, and it had with full knowledge of all the facts consented thereto, and this for many reasons:

(1) The application of plaintiff to defendant company to become surety for its president distinctly states the bank had a cashier at the time this application was presented to defendant for acceptance, as the law of the state under which the bank was created ordains, and if in fact the bank was not so operated, this was done in direct violation of its existence.

(2) It will not be presumed the bank did a useless thing in changing Brownback from president of the board of directors of the bank to the position of cashier in the bank, if the duties devolving upon him done for the bank were to remain precisely the same. In such case the change of office would be merely a useless thing, and it will not be presumed a change in office was so done.

(3) The defendant company might not desire to become surety on the bond of Brownback in the office of cashier of the bank on the same terms and conditions it would become surety on the bond of Brownback as president of the bank, and in this case, as the bond is written, is not an indemnity against the acts of Brownback while acting in the capacity of an individual or other officer of the bank than that of president.

(4) Before the defendant company can be held to have contracted to become the surety on the bond of the cashier of the bank, or to have waived the matter of the change of the assured, Brownback, from president of the bank to that of cashier, it was incumbent on the plaintiff not to show the bank was a one-man bank in violation of the law of the state under which it was created and operating, but to have shown defendant consented to further continue the bond in force with full knowledge of these facts.

(5) Under the general principles of the law of banks and banking there are, in the very nature of things, vast differences between the duties and obligations of the president of the board of directors of a bank and of the many important duties imposed upon cashiers of such institutions. Thus, it has been held (R. C. L. § 66, p. 440):

"The difficulty of defining with precision the powers of a president of a bank is well recognized. It may safely be said that they are not so important or extensive as those of the cashier. The president is but the executive agent of the board of directors, to perform such duties as may be devolved upon him."

In Fleckner v. President, etc., 8 Wheat. (U. S.) 338, 5 L. Ed. 631, Mr. Justice Story, delivering the opinion of the court, said:

"The cashier is usually intrusted with all the funds of the bank, in cash, notes, bills, etc., to be used, from time to time, for the ordinary and extraordinary exigencies of the bank. He receives, directly, or through the subordinate officers, all moneys and notes. He delivers up all discounted notes, and other property, when payments have been duly made. He draws checks, from time to time, for moneys, wherever the bank has deposits. In short, he is considered the executive officer, through whom, and by whom, the whole moneyed operations of the bank, in paying or receiving debts, or discharging or transferring securities, are to be conducted."

In Merchants' Bank v. State Bank, 10 Wall. (U. S.) 604, 19 L. Ed. 1008, it is held:

"Evidence of powers habitually exercised by a cashier of a bank with its knowledge and acquiescence, defines and establishes, as

to the public, those powers, provided that they be such as the directors of the bank may, without violation of its charter, confer on such cashier."

In City Bank of New Haven v. Perkins, 29 N. Y. 554, 86 Am. Dec. 332, it is said:

"He was the financial officer of the latter bank, and the only person who could thus transfer them. His authority to make such transfer ex officio, for a legitimate purpose, is undoubted."

In Blair v. Insurance Co., 10 Mo. 559, 47 Am. Dec. 129, it is said:

"So if the surety's engagement relates to a particular office, it extends to such things as were included in the office when the engagement was entered into."

[6] The plaintiff in this case must have established the exact fiduciary relation and capacity specified in the bond or it fails to make out a case. State v. Mahan, 138 Mo. 112, 39 S. W. 465; Washington v. State, 72 Ala. 272.

In Frost on The Law of Guaranty Insurance (2d Ed.) § 113, p. 348, it is said:

"One of the implied conditions of all policies of fidelity insurance is that the 'risk' shall continue to occupy the position in the employ of the insured designated in the proposal or application for the policy. Unless the policy expressly provides for changes in such employment, as, for example, expressly authorizing employment in more than one position, or changes from one position to another, there can be no recovery had by the insured from the insurer on account of defaults of the 'risk' occurring while performing duties of a position materially different from that designated in such proposal or application. The reason which induces the courts to imply such a condition as the foregoing, is that fidelity insurance companies write policies for certain designated premiums, which vary in amount according to the nature and extent of the risk incurred. If, for example, the insured asks the insurer to write a policy on a person employed as a bookkeeper in a bank, the insurer might

be willing to do this at a very low premium, owing to the small chance of its ever being required to make good any losses occasioned by such person's dishonesty while occupying the position of bookkeeper for the insured. However, if it lay within the power of the insured to change the employment at will of such person, and immediately after issuing the policy he should appoint him cashier, instead of bookkeeper, it would amount to little less than a fraud upon the insurer to hold the latter liable for his acts and increased responsibilities not in contemplation of both parties at the time the policy was issued."

In Farmers', etc., v. U. S. F. & G. Co., 28 S. D. 315, 133 N. W. 247, 36 L. R. A. (N. S.), 1152, it is said:

"In the absence of a provision authorizing employment in more than one position, or changes from one position to another, there can be no recovery for the default of an employee while occupying a position materially different from that designated in the proposal or application."

In Bassett v. American Surety Co., 210 Ill. App. 477, it is said:

"Any dealings between the principal and obligee amounting to a departure from the contract by which the surety is bound by materially varying or enlarging his liability without his consent will generally operate to discharge him. It is said: 'The same result will follow, as a general thing, where the principal acts in another office or capacity from that designated in the contract of suretyship, or where his responsibilities in the same office are increased.'"

The authorities on this subject appear to be very numerous and well reasoned. While the defendant in this case has filed a cross-demand in the nature of a cross-bill in equity to procure a decree canceling the bond, in view of the conclusion reached this may be dismissed from consideration with other questions raised and not necessary to be determined.

Judgment must go for the defendant. It is so ordered.