ROLLSTONE NATIONAL BANK *vs.* WILLIAM A. CARLETON
& others.

Worcester.   Oct. 4, 1883. — Jan. 8, 1884.   FIELD & W. ALLEN, JJ., absent.

In an action against the sureties upon a bond, given to a bank, and conditioned
for the faithful discharge by C. of "all his duties as clerk of said bank," and
against the misappropriation of any of the funds of the bank "which may come
under the care or control of said C. as clerk," the evidence showed that C., dur-
ing the whole term of his employment, performed the duty, to some extent,
usually performed by a teller, of paying and receiving money over the counter
of the bank.   It was found as a fact that "the duties as clerk," contemplated
in the bond, did not mean merely the duties of a bookkeeper, but that they em-
braced the duty of receiving and paying out money at the counter of the bank.
*Held*, that the defendants were not entitled to a ruling, as matter of law, that
there had been such a change in the duties of the clerk as to discharge them
from liability.

In an action against the sureties upon a bond given to a bank by C., and condi-
tioned for the faithful discharge of his duties as clerk of the bank, a breach of
which is proved, the question whether a former judgment recovered by the bank
against C. is conclusive evidence of the amount for which the sureties are liable
is not open, but judgment must be entered for the penal sum of the bond.

MORTON, C. J.   This is an action against the principal and
sureties upon a bond, given on February 4, 1871, for the faithful
performance of the duties of the principal obligor, Carleton, as
clerk of the Rollstone National Bank.   The condition is as fol-
lows : " Whereas the said William A. Carleton proposes to
become a clerk of said bank, and also to aid in the conduct of
the clerical business of the Worcester North Savings Institution,
a corporation duly established by law, and having their place of
business with said bank : Now if the said William A. Carleton
shall faithfully discharge all his duties as clerk of said Rollstone
National Bank, and shall well and faithfully discharge all his
duties as clerk of said savings institution, so long as he shall be
employed as aforesaid, without losing, wasting, embezzling, or in
any manner misappropriating any of the funds of said bank or
savings institution, or of any persons or companies for which said
corporations may be answerable, which may come under the care
or control of said Carleton, as clerk aforesaid, then this obligation
shall be void, otherwise shall remain in full force and virtue."

At the trial it appeared that, at the date of the bond, Carleton
was elected clerk in the plaintiff bank ; that he continued in the
service of the bank until April, 1881, when he left; and that,

during the last eighteen months of his service, he was guilty of defalcations and embezzlements of the plaintiff's funds. The defendant sureties requested the court to rule, as matter of law, that, upon the evidence, there was "such a change in the duties of said Carleton from those of a clerical nature to those of paying and receiving the money of the bank, and such a change in his official relation from clerk or bookkeeper to that of teller, which latter office has a well-defined meaning in law, as to materially increase the risk of his sureties, and that they were thereby discharged from their obligation, and cannot be held liable for an embezzlement after such change."

This request presents a mixed question of law and fact. There is no doubt that, if the bank had elected Carleton to a new and different office, the sureties would not be responsible for the discharge of his duties in such office. Or if, after the bond was executed, the bank imposed upon Carleton new functions, not within his proper duties as clerk, as understood and contemplated when the bond was given, it would discharge the sureties. But it is partly a question of fact as to what the parties meant when they guaranteed the performance of "all his duties as clerk of said Rollstone National Bank." The word "clerk" does not necessarily import a person who performs the duties of a mere bookkeeper. It is a general name which may embrace many duties.

The bond must be construed with reference to its subject matter and the known situation of the parties; and, in the absence of any provision defining the duties of clerk, it was competent to show what the office of clerk was, and what were its known duties. The evidence in the case clearly justified the presiding justice in finding that "the duties as clerk," contemplated in the bond, did not mean merely the duties of a bookkeeper, but that they embraced the duty of receiving and paying out money at the counter of the bank. Indeed, the bond itself shows this to have been the understanding of the parties, as it expressly speaks of misappropriating any of the funds of said bank "which may come under the care or control of said Carleton as clerk aforesaid." And the evidence shows that, from the beginning, he performed the duty, to a greater or less extent, usually performed by a teller, of paying and receiving money.

In January, 1873, a change was made in the officers of the bank, the cashier being elected president, and the assistant cashier being elected cashier. But no change was made in the office held by Carleton. Although in two or three instances he is spoken of on the books of the bank as teller, the evidence is undisputed that he was never elected teller. On the contrary, he acted continuously, during his whole term of service, under his appointment as clerk, made when the bond was given. After April, 1873, he was relieved from his work for the savings institution, and performed more work for the bank in receiving and paying out money than he had before done. If it be admitted that he performed substantially the duties of a teller, we think this did not discharge his sureties. He performed them as the proper duties of the office of clerk, to which the bond applied. They were not new duties imposed upon him, but were the duties which it was contemplated by the bond that he was to perform. The change did not affect the identity of his office, nor of the kind of duties he was to perform. We are of opinion that the presiding justice of the Superior Court was justified in his finding that Carleton continued a clerk, and that there was no such change in his duties as to discharge his sureties on this bond. It follows that the plaintiff is entitled to judgment for the penal sum of the bond. Pub. Sts. c. 171, § 9.

The question whether the former judgment recovered against Carleton is conclusive evidence of the amount for which the sureties are liable is not properly before us. This is an action upon the bond, and judgment must be for the penal sum. Upon a hearing in chancery to ascertain the sum for which execution should be awarded, the question may be raised if the parties desire it. On such hearing, the question will be open whether the two actions are for identically the same cause, and also the question whether the sureties may not impeach the former judgment as fraudulent, upon the ground that the plaintiff made up a judgment upon the default of Carleton for the full amount of his defalcation, knowing that he had repaid the bank a large part of it.      *Judgment for the plaintiff.*

*W. S. B. Hopkins & F. A. Gaskill*, for the sureties.

*H. C. Hartwell*, for the plaintiff.