EASTERN RAILROAD COMPANY *vs.* WILLIAM M. LORING & another.

Suffolk. Nov. 11, 1884. — Jan. 9, 1885. FIELD, DEVENS, & COLBURN, JJ., absent.

It is no defence to an action upon a bond conditioned for the faithful performance by a person, who has been appointed ticket seller of a railroad corporation, of " all the duties of the said office which are or may be imposed upon him under this or any future appointment," that, after his appointment, the capital stock of the corporation was increased, his duties, by reason of the corporation forming business connections with other corporations, enlarged, and his salary augmented accordingly.

CONTRACT upon a bond executed by the defendant Loring as principal, and by the other defendant as surety, and conditioned that Loring, who had been appointed ticket seller of the plaintiff corporation in Boston, should " faithfully perform all the duties of the said office or place which are or may be imposed upon him under this or any future appointment," and promptly account for and pay over all sums of money received by him for the corporation. The case was submitted to the Superior Court, and, after judgment for the plaintiff, to this court, on appeal, upon agreed facts, in substance as follows:

The defendant Loring was appointed ticket seller of the plaintiff corporation, gave the bond declared on, and entered

upon his duties. He continued in the position of ticket seller until December 7, 1877, when a deficit was discovered in his accounts of $8007.59, which sum he has failed to account for and pay over.

At the time the bond was executed, in 1856, the capital stock of the plaintiff corporation was $2,853,400. After this it was increased from time to time, and at the time of the defalcation, in 1877, it was $4,997,600.

At the time of the appointment of Loring, his duties as ticket seller included the sale of tickets over the line of the plaintiff's road from Boston, in this Commonwealth, to Portsmouth New Hampshire, and its branches, in all about 130 miles, and also over four other railroads, comprising 910 miles, and three steamboat lines.

After Loring entered upon his duties, the business of the plaintiff was extended from time to time by forming new connections, so that at the time of his defalcation he was selling tickets over the lines of thirteen other railroads, comprising 1211 miles, and two steamboat lines in addition to those before mentioned :

At the time of Loring's appointment, he performed all the duties of the office himself, but, as the business of the road increased, and before the defalcation, the duties of his office had increased to such an extent that an assistant ticket seller was employed by the plaintiff to help him in his duties, who was entrusted with the sale of tickets, and whose salary was paid by the plaintiff, but who did not participate in any misappropriation of the plaintiff's funds.

Loring's salary as ticket seller was $1000 a year at the time of his appointment. In 1867 it was increased to $1500 per year. In 1871 it was further increased to $1800 per year, and continued such to the time of the defalcation.

*H. W. Suter & W. A. Hayes*, 2d, for the surety.

*R. Olney*, for the plaintiff.

C. ALLEN, J. At the time when the bond in suit was given, the Eastern Railroad Company had business connections with certain railroad and steamboat companies, whose tickets it sold in Boston. To make other similar business connections in the future would be natural and probable. The condition of the

bond was, that Loring should "faithfully perform all the duties of the said office or place which are or may be imposed upon him under this or any future appointment." This appears to recognize that additional duties to those then existing might be put upon him. Looking at the kind of position which he held, it is fairly to be inferred that extensions of the business were contemplated. We agree that any substantial change in his office, without the surety's consent, would discharge him from liability. But in this case there was no such change. The name of Loring's office or position and the nature of his duties remained the same; the only change was, that his duties and compensation were increased in amount. Such increase was fairly within what the bond allowed. *Rollstone National Bank* v. *Carleton*, 136 Mass. 226.

The counsel for the surety place their chief reliance on *Grocers' Bank* v. *Kingman*, 16 Gray, 473, where an increase of the capital stock of a bank was held to discharge sureties upon a cashier's bond from further liability. There is no close analogy between the duties and responsibilities of the cashier of a bank, and those of a ticket seller of a railroad company. The former are more directly affected by an increase of the capital stock of the corporation than the latter. Moreover, in that case the sureties were bound for losses that might arise from the cashier's mistakes, as well as from his fraud, inattention, or negligence in the performance of his duties. That decision is not an authority for the present case.

*Judgment affirmed.*