FOURTH NATIONAL BANK OF THE CITY OF NEW
YORK, RESPONDENT, *v.* JOSEPH S. SPINNEY AND
STEPHEN CORNWELL, APPELLANTS, IMPLEADED, ETC.

*Liability of sureties upon a bond given by a bookkeeper to secure the faithful per-*
*formance of his duties — when a recital therein, that he has already been appointed,*
*does not show a want of consideration — additional duties may be imposed upon*
*him when permitted by the language of the bond.*

This action was brought by the plaintiff, a national bank, to recover the sum of
$5,000 upon a bond executed by the defendants, which recited that "Richard
H. Cornwell (one of the defendants), *has been* appointed a *bookkeeper*" of the
bank, and was conditioned for the faithful performance by him of his duties
and trusts "as bookkeeper," so long as he should continue in that capacity;
"or if the said Richard H. Cornwell shall be appointed to any other office, duty
or employment by the president and directors of the said bank, he shall also
faithfully perform the duties assigned to and trusts reposed in him, and also
all such other duties as may from time to time be assigned to or undertaken by
him, in relation to the said bank."

Upon the trial of this action it was proved that the defendant Cornwell had appro-
priated to his own use securities held by the bank to a larger amount than the
penalty of the bond. The defendants contended that there was no considera-
tion shown to support the bond, as none was expressed therein, and it appeared
from the recital that Cornwell had been appointed a bookkeeper prior to the
execution and delivery of the bond:

*Held,* that this recital could not be construed to deprive the bond of a legal con-
sideration, as it was to be inferred from the language of the instrument and the
evidence in the case, that the execution and delivery of the bond was required
to render the appointment complete and effectual, and that, until that should be
done, the appointment would be provisional only, not binding the bank to con-
tinue it or to accept the services or employment of Cornwell.

Upon the trial, evidence was given tending to show that, during his continuance
in the employment of the bank, Cornwell performed other duties relating to the
assistance of the cashier and assistant cashier in other departments of the
business; these duties being described by one of the witnesses as being those of
a loan clerk in receiving, caring for and exchanging securities placed in the
custody of the bank. The president of the bank testified that his appointment
as bookkeeper was at no time changed, but continued while he remained in
the service of the bank, and that these were additional duties or services
required from him while he still sustained his appointment as bookkeeper.

In submitting the case to the jury the court directed them that if Cornwell con-
tinued in the employment of the bank as bookkeeper, even if other duties were
superadded to that employment, the defendants would be liable on the bond,
but, if he had been virtually removed from the position of a bookkeeper and

put into another position which enhanced the liability of the defendants on their bond, then they were entitled to a verdict.

*Held*, that this direction properly presented the case to the jury.

That the bank had the right to exact the performance of these duties from the bookkeeper, in addition to those appertaining to his services in that capacity, whenever that became necessary and he was willing to render the service to it, as the recital contained in the bond did not forbid this employment, while the conditions expressly provided for and permitted it.

*National Mechanics' Banking Association* v. *Conkling* (90 N. Y., 116); *Rochester City Bank* v. *Elwood* (21 id., 88) followed.

Questions were asked during the trial as to whether ordinary bookkeepers had access to the negotiable securities in the custody of the bank, and what were the duties of an assistant cashier or loan clerk, and what were the services of the principal in the bond when he first entered into the employment of the bank, and what difference there was in the duties of the bookkeeper and those of a loan clerk or assistant cashier, and whether there was any acceptation among bankers as to the duties of bookkeepers in banks, whether Cornwell, in handling securities or dealing with the securities of the bank, performed duties ordinarily performed by assistant cashiers, and whether what was done by him was not outside of the ordinary duties of a bookkeeper, and whether it was out of his ordinary duties to handle the securities of the bank, and whether this was not a peculiar and special duty which devolved upon some person occupying a higher position than that of bookkeeper, and what were the ordinary duties of a bookkeeper.

*Held*, that under the legal rules applicable to this case, the answers to these questions could not, if they had been received, have changed the aspect of the controversy, and that the court did not err in refusing to allow them to be answered. (Brady, J., dissenting.)

Appeal from a judgment entered on the verdict of a jury, and from an order denying the defendants' motion for a new trial.

*George A. Black,* for the appellants.

*David Wilcox,* for the respondent.

Daniels, J. :

The recovery was for the sum of $5,000, upon a bond executed by the defendants, for the faithful performance of his duties and trusts by Richard H. Cornwell, as a bookkeeper in the employment of the plaintiff, or, if he should be appointed to any other office, duty or employment by the president and directors of the bank, that he should also faithfully perform the duties assigned to him and trusts reposed in him, and, also, all such other duties as might from time to time be assigned him, or undertaken by him in relation to the

bank. It was alleged in the complaint, and proved upon the trial, that he had appropriated to his own use securities held by the bank to a larger amount than the penalty of the bond, but the defendants resisted their liability to pay upon the recital in the bond that their principal, Cornwell, had been appointed a bookkeeper of the bank and was afterwards promoted to a more responsible position. This appointment was urged as an act so far preceding the execution and delivery of the bond as to prevent it from operating as a consideration supporting their liability upon it. But it is to be inferred from the language of the instrument, and the evidence in the case, that the execution and delivery of the bond was required to render the appointment complete and effectual. Until that should be done the appointment would be provisional only, not binding the bank to continue it or to accept the services or employ, ment of Cornwell, the principal in the bond. The recital stated no more than what had previously taken place, that Cornwell had been selected as a bookkeeper of the bank. And the acts of the parties in giving the bond support the presumption that the appointment was made to take effect upon its execution, as a condition ; and it first became complete by the delivery of the bond to the plaintiff. Under the circumstances, this recital cannot be so construed as to deprive the bond of a legal consideration. It is to be considered on the contrary, as evincing the fact to be that the appointment had been made on the understanding and condition that it was to be followed by and dependent upon the execution and delivery of the bond. And that supplied a sufficient consideration for its support as a legal obligation, and distinguished this case from those which have been cited by the counsel for the appellant in support of this position.

It appeared by the evidence taken at the trial that Cornwell, the principal in the bond, performed other duties for the bank during his continuance in its employment. Those duties, in great part, related to the assistance of the cashier and the assistant cashier, in their department of the business of the bank. These duties are described by one of the witnesses as being those of a loan clerk in receiving, caring for and exchanging securities placed in the custody of the bank. But while these duties were performed by Cornwell, the evidence of the president of the bank was that his appointment

as bookkeeper was at no time changed, but it continued while he remained in the service of the bank, and that these were additional duties or services required from him while he still sustained his appointment as bookkeeper and the relations arising out of or appertaining to that position to the bank. And in submitting the case to the jury, the court directed them that if Cornwell continued in the employment of the bank as bookkeeper, even if other duties were superadded to that employment, the defendants would be liable on the bond. But if he had been virtually removed from the position of bookkeeper and put into another position, which enhanced the liability of the defendants on their bond, then they were entitled to a verdict.

This direction presented the case to the jury as the law applicable to it has become settled, for the bank had the right to exact the performance of these duties from the bookkeeper in addition to those appertaining to his services in that capacity, whenever that became necessary, and he was willing to render the service to the bank. The recital contained in the bond did not forbid this employment, while the condition expressly provided for and permitted it. And where that is the language of the instrument, it has been held that the performance of the additional services, as long as the principal still continues to hold the appointment intended to be secured by the bond, will not discharge the sureties from liability for his default. (*Rochester City B'k* v. *Elwood*, 21 N. Y., 88; *Nat. Mechanics Banking Ass'n* v. *Conkling*, 90 id., 116.) The bond in the last case was very much like that upon which this action was brought, and the court concluded by its decision that "the sureties undertook for the fidelity of their principal only while he was bookkeeper; but if while bookkeeper the duties of any other office, trust or employment relating to the business of the bank were assigned to him, their obligation was to extend to the discharge of those duties. While bookkeeper he might temporarily act as teller or discharge the duties of any other officer during his temporary illness or absence, or he might discharge any other special duty assigned to him, and while he was thus engaged the bank was to have the protection of the bond." (Id., 121.) And this principle was again declared and maintained in *Mayor, etc.,* v. *Kelly* (98 N. Y., 467), where it was repeated that "the sureties are never dis-

charged by the imposition of new duties which are distinct and separable from those protected by the guaranty, unless such new employment renders impossible, or materially hinders, or impedes the proper and just performance of the duties guaranteed. Where the new employment is separate and distinct, and in no respect essentially interferes with the duty covered by the bond, the imposition of such added duty is wholly a matter between the employer and servant with which the sureties have no concern." (Id., 470.) And this is also sanctioned by *Rollstone B'k* v. *Carleton* (136 Mass., 226).

As a matter of evidence what the principal was called upon to do outside of his duties as bookkeeper, did not supercede his appointment or employment in that capacity, but was incidentally required in the course of the business of the bank. And it was no defense to the sureties in the bond that it brought him more directly in contact with the money and securities of the bank, then he would have been if he had not been acting in these other capacities. As long as he still remained the bookkeeper, as the evidence tended to prove that he did, and the jury must have found the fact to be so before they could render a verdict in favor of the plaintiff, his defalcations were protected by the bond and the defendants as his sureties were liable.

Questions were asked during the trial whose purpose was to describe the duties and services of a bookkeeper in a bank, which the court did not permit to be answered. These questions presented the inquiries whether ordinary book-keepers had access to the negotiable securities in the custody of the bank, and what were the duties of an assistant cashier or loan clerk, and what were the services of the principal in the bond when he first entered into the employment of the bank, and what difference there was in the duties of the bookkeeper and those of a loan clerk or assistant cashier, and whether there was any acceptation among bankers as to the duties of bookkeepers in banks, whether Mr. Cornwell in handling securities or dealing with the securities of the bank performed duties ordinarily performed by assistant cashiers, and whether what was done by him was not outside of the ordinary duties of a bookkeeper, and whether it was out of his ordinary

duties to handle the securities of the bank, and whether that was not a peculiar and special duty which devolved upon some person occupying a higher position than that of bookkeeper, and what were the ordinary duties of a bookkeeper. These questions under the legal rules applicable to the case, contemplated answers that were entirely immaterial. For if Cornwell the principal in the bond, still continued to hold his position under his appointment of bookkeeper, and discharged the other duties mentioned by the witnesses without vacating that position or employment, to aid and assist in the management of the general business of the bank, the defendants would not be relieved from liability by reason of the performance of any of these additional duties. And the evidence, if it had been received, would not have changed the aspect of the case in either of these respects. One of the witnesses was inquired of whether he himself gave an additional bond as he was advanced from one position to another, and one of the defendants was inquired of whether he knew the duties Mr. Cornwell was performing in this bank after he had executed the bond in this case. If these questions had been answered, neither of them, nor any of the others which were excluded, could have changed the legal aspect of the controversy. It was governed by the rules and principles which have already been mentioned, supported by the authorities of the highest court in the State. The case was carefully as well as comprehensibly submitted to the jury, and their verdict is supported by the evidence which was produced before them during the trial. No material error intervened upon which this court would be justified in interfering with the result, and both the judgment and order should be affirmed.

Van Brunt, P. J.:

I concur in the result of this opinion upon the ground that the condition of the bond in suit, contemplated the appointment to another office of Cornwell, and thus the case is brought directly within the reasoning of the *National Mechanics' Banking Association* v. *Conkling* (90 N. Y., 117).

In the case cited it is stated that, there being no words binding the sureties in case of the appointment of the principal to any other office, there is no evidence that the sureties were willing to be

bound if he should be appointed to a different office. In the case at bar, however, the sureties have expressly indicated not only their willingness, but their intention to be bound in case Cornwell is appointed to any other office, duty or employment, and this is clearly the extent of their obligation, considering only the language used. This was clearly the intention of the parties, and the liability sued upon was strictly within the terms of the contract.

BRADY, J. (dissenting):

The defendants were sued upon a bond executed by them and their sureties, and the only fact apparently necessary to establish their liability under its provisions was the charge of dishonesty alleged against their principal. The defendants claimed immunity from the fact which they alleged, of the advancement of their principal in the bank to a position of more responsibility and graver duties in reference to which they did not contract. In other words he had ceased to be a bookkeeper, and they had not guaranteed his conduct in his new place. The defendants sought, by all methods available, to establish the alleged change, and this contention was at length submitted to the jury as the controlling feature of the controversy. The learned justice presiding at the trial said to the jury : " The only point which it is necessary for you to consider is, whether or not there was any change made in relation to the employment of Cornwell by the plaintiff, which varied the liability assumed by the defendants by reason of the agreement which they entered into ;" and, further, that upon that point the simple question was whether or not Cornwell was continued as a bookkeeper. This view of the contest was based upon the adjudged doctrine of several cases in this State and in England, namely, that the liability of sureties is always *strictissimi juris* and cannot be extended by construction, and further that the recitals in bonds undertaking to express the precise intent of the parties, controls the condition or obligation which follows, and does not allow it any operation more extensive than the recital which is its key. (*Mayor* v. *Kelly*, 98 N. Y., 468 ; *Nat. Mech. Bank. Ass'n* v. *Conkling*, 90 id., 116 ; *Manuf. Bank* v. *Dickerson*, 41 N. J. Law [12 Vroom.], 448 ; *N. W. Nat. Bank* v. *Keen* [*Phila Common Pleas*], 37 Legal Int. 124 ; 14 Phila. R., 8 ; *Nat. Mech. Bank* v. *Conkling, supra*, in Sup. Ct., 24 Hun, 498.)

The question is discussed elaborately in the first case cited, *Mayor* v. *Kelly* (*supra*), and an attempt is made to harmonize the seeming incongruity of limiting the effect of the condition by the recital, when the former embraces clearly and distinctly more than the latter indicates or suggests as in this case. It is said for example that "sureties are never discharged by the imposition of new duties which are distinct and separable from those protected by the guaranty, unless such new employment renders impossible or materially hinders or impedes the proper and just performance of the duties guaranteed," and further, that the new duties exposed the principal "to temptation or gave broader opportunity for dishonesty is immaterial, for it is the very substance of the contract of the sureties that as bookkeeper he will be honest and faithful whatever temptation may approach." The responsibilities, it may be said, were here graver in consequence of his greater exposure to temptation. The theory, however, upon which the case was conducted and submitted to the jury was more liberal than was precisely permitted by the promulgated rules governing the rights of the contracting parties, The question was not to put it correctly, whether there was a change in the position of the principal only, but whether, if such a change had been made, it hindered or impeded a just and proper performance of the duties guaranteed.

The defendants, however, were entitled to introduce evidence affecting the issue which was thus presented to the jury for their determination, and to which reference has been made, as submitted by the learned justice presiding, namely, whether there was any change (in relation to the employment of Cornwell by the bank) which "varied the liability under which these defendants came by reason of the covenant or obligation into which they had entered." Upon that issue several questions were asked which seemed to be pertinent, but were excluded. It was a proposition on behalf of the defendants that their principal had been made a loan clerk, and thus given a new position, and the witness called on their behalf was asked if he knew the duties of a loan clerk, and having responded in the affirmative, was asked to describe them; the question was objected to and excluded. The question was also asked of another witness "Is there any difference in the duties of a bookkeeper and those of a loan clerk, or assistant cashier generally?" Which was

excluded and exception taken. A further question was asked "Is there any common acceptation among bankers of the duties of bookkeepers in banks?" This was excluded. Another question was asked "Did Mr. Cornwell, to your knowledge, perform the duties of a loan clerk in the Fourth National Bank?" This question was also excluded and exception taken. This question was also asked of Mr. Cornwell "In handling the securities or dealing with the securities in this bank, did you perform the duties which are ordinarily performed by assistant cashiers within your knowledge?" It was excluded and an exception taken. Several of these questions were asked of a witness, who was a clerk in the plaintiff's employment, during the period that Mr. Cornwell was engaged there, and a question was asked of another witness "Can you state whether from your knowledge of the duties of a bookkeeper in the bank, what was done by Mr. Cornwell, was or was not outside of the ordinary duties of a bookkeeper?" And, also "Is it within the ordinary duties of a bookkeeper, within your knowledge, to handle the securities of a bank" and still further "Is it not a peculiar and special duty which has devolved upon some particular person higher than a bookkeeper, to handle securities which a bank takes on call loans?" These questions were all excluded and exceptions duly taken.

The relevancy of this proof arises from the fact that the principal had been assigned to duties in immediate connection with the cashier of the plaintiff, and had access to securities which, it would seem, were deposited upon loan accounts, and as to which, to some extent at least, he was a bookkeeper, inasmuch as he made entries upon a book kept in reference to them; and from the fact that the issues submitted to the jury, as already stated, involved a variance between the ordinary duties of a bookkeeper and those of a loan clerk or person occupying the position to which the principal was advanced, if advancement it were; and from the further fact that the learned justice, during the trial of the cause, announced that the principal was a bookkeeper, that there was no doubt of it, and that was all the bond was good for. The learned justice seems to have been impressed with the conviction that if the principal continued in the bank as a bookkeeper, no matter what duties were superadded, the defendants were liable on their obligation, and he

so stated to the jury; but at the same time he said that if the principal was virtually removed from the position of bookkeeper and put into another which enhanced the liability of the defendants on their obligation or the risk which they ran as sureties, they were entitled to a verdict. If anything of that kind was done, and the principal was continued as a bookkeeper all the time that the other duties which have been spoken of were performed, then the obligation attaches and the defendants are liable. As we have seen, this is not precisely the rule established by the case to which reference has been made. It does not present the abstract proposition whether a man is continued as a bookkeeper, but whether the new employment rendered imposssible or materially hindered or impeded a proper and just performance of the duties guaranteed.

It is apparent, from the incidents of the trial thus stated, that it was a mistrial, inasmuch as the evidence excluded, if received upon the question submitted, might, if received, have satisfied the jury that the new employment constituted the principal, more than the bookkeeper, and, as matter of fact, therefore, was beyond the obligations assumed by the defendants in reference to his conduct.

For these reasons the judgment must be reversed and a new trial ordered, with costs to abide the event.

Judgment and order affirmed