Sparks v. Cherokee County.

O. W. SPARKS v. THE BOARD OF COUNTY COMMIS-
SIONERS OF THE COUNTY OF CHEROKEE.

No. 15,122.    (91 Pac. 89.)

SYLLABUS BY THE COURT.

1. OFFICIAL BONDS—*Principal's Term Extended—Release of
Surety.*  Where by a statute changing the date of an election,
enacted after a county officer has given his official bond, his
term of office is extended for a year, the sureties on such
bond cannot be held liable by reason of any misconduct on
his part occurring after the expiration of the time for which
he was elected, notwithstanding the bond is conditioned for
his good behavior during his continuance in the office "by
virtue of said election" and the constitution provides that
"county officers shall hold their offices for the term of two
years, and until their successors shall be qualified."

2. —— *Principal Not Released.*  An action upon the bond
for such misconduct may be maintained against the principal.

Error from Cherokee district court; WILLIAM B.
GLASSE, judge.  Opinion filed July 5, 1907.  Affirmed.

*E. E. Sapp,* and *J. N. Dunbar,* for plaintiff in error.
*Tracewell & Moore,* for defendant in error.

The opinion of the court was delivered by

MASON, J.: In November, 1899, O. W. Sparks was
elected sheriff of Cherokee county for the regular term,
which under the law as it then stood was fixed at two
years, beginning with the ensuing January.  As re-
quired by the statute (Gen. Stat. 1901, §§ 1740, 1741)
he gave a bond, signed by himself and several sureties,
for the faithful discharge of his duties.  In 1901 the
legislature did away with elections in the odd-numbered
years.  (Laws 1901, ch. 176; Gen. Stat. 1901, §§ 2751-
2755.)  The result of this action was to extend Sparks's
term until January, 1903 (*Pruitt v. Squires,* 64 Kan.
855, 68 Pac. 643), and he continued to hold the office
until that time.  During the year 1902 he collected and
retained various fees which it may for present pur-

poses be assumed he should have paid over to the county. An action was brought by the county commissioners upon the sheriff's bond to recover the amount so withheld. The matter was sent to a referee, who reported that neither the sheriff nor his sureties were liable in the action. The court approved the report as to the sureties, but held that the county was entitled to recover against the principal. This proceeding is brought to review such rulings—the commissioners claiming that their demand against the sureties should have been sustained, the sheriff that he also should have been exonerated. The only questions involved are whether the bond is to be so construed as to make the sureties answerable for any misconduct of the sheriff occurring during the year which the legislature added to his term after his service had begun, and whether a recovery can be had against the officer himself for such misconduct in an action upon the bond.

It is true that the constitution provides (formerly by section 3 of article 9, now by section 2 of article 4) that "all county . . . officers shall hold their offices for the term of two years, and until their successors shall be qualified." (Laws 1901, ch. 424, § 1.) And it was decided in *Pruitt v. Squires,* 64 Kan. 855, 68 Pac. 643, that in such a case as the present the sheriff continued to hold office from January, 1902, to January, 1903, in virtue of that provision—that his service for that period was under his original election —that the effect of the statute was to extend the old term, not to create a new one. The bond in question, following the language of the statute, purported to guarantee the good behavior of the sheriff "during his continuance in office, by virtue of said election." Literally construed, therefore, the terms of the bond were broad enough to cover the misfeasance here complained of. But it is urged with much force that the sureties, being favorites of the law, are entitled to any reasonable construction that will relieve them from liability. There is a sharp conflict of authority upon the question

whether, notwithstanding a statutory provision that an officer's term shall continue until his successor has qualified, a bondsman's liability does not cease as soon as a reasonable time has elapsed to permit such qualification, even although it does not take place. The authorities on the subject are collected in volume 27 of the American and English Encyclopædia of Law, at page 535, notes 5 and 6, and in a note in 103 Am. St. Rep. 932. This court, in *Riddel v. School District,* 15 Kan. 168, definitely took a position in line with the cases which favor the surety by limiting his liability closely to matters arising in the regular term for which his principal was chosen. So in *Life Association v. Lemke,* 40 Kan. 661, 20 Pac. 512, it was said:

"It will be conceded that if the bond is an official and an annual one, the obligors are only bound for the defaults that occurred during the year for which the bond was given. The contract of a surety is favorably regarded by the law, and even in cases where the officer is authorized to hold over his term and until his successor is elected and qualified the liability on the official bond is not extended beyond the duration of the term. When an officer is chosen for a term of limited duration and a bond for the faithful performance of duties is given, the presumption is that the obligors or sureties only contract for the faithfulness of the officer during that time, and the obligation of the sureties is not extended by the mere fact that such officer is reelected or for any reason holds over the term." (Page 662.)

The present case is peculiarly one which calls for the application of the principle by which a liberality of interpretation is allowed for the benefit of a surety. When Sparks's bond was given those who signed with him might perhaps have been expected to take into account that through some accidental circumstances— such as the delay of his successor to qualify—his term of office might be extended for some inconsiderable period beyond the normal two years. But they could not have anticipated that the legislature would add a whole year to his time of service. No such change

could possibly have been contemplated, and if the contention of the county were correct the practical effect of the statute would be to impose upon them an obligation which they might never have been willing voluntarily to assume.

In *King County v. Ferry*, 5 Wash. 536, 32 Pac. 538, 19 L. R. A. 500, 34 Am. St. Rep. 880, the precise question here presented arose. Upon the authority of that case it is said in volume 27 of the American and English Encyclopædia of Law, at page 535:

"Where the term of office is extended by statute after the execution of the bond, the sureties thereon are not liable for the faults occurring during the extended term, though the statutes provide that the officer shall continue in office until his successor is elected and qualified."

The grounds of the decision are shown by this excerpt from the opinion:

"No consideration of the interests of the public will justify a court in extending by construction the obligation of a citizen under his contract beyond the scope of its natural import. The contract which embodies this obligation, like any other contract, must be construed to give effect to the intention of the parties, and that intention is to be gathered from the language employed and the circumstances surrounding the execution of the instrument. Now, what were the circumstances surrounding the execution of this bond, and what length of time would these bondsmen naturally think they were contracting with reference to? The correct answer to the last question determines their liability. There need be no artificial rules of law applied. It is a simple question of intention gathered from the language of the contract, read in the light of the surrounding circumstances.

"At the time this bond was given the term of office of the treasurer as provided by law was two years. It is argued that the bondsmen entered into their obligation in view of the possible modification of their liability by the legislative assembly, and with notice that the legislature would have a right to continue the incumbent in office beyond the term for which he was elected. So far as the first proposition is concerned,

the legislature would not have any right to pass a law that would change the terms of the contract or in any way impair its obligation; and so far as the second proposition is concerned, while the sureties might be held to take notice that the legislature could extend the term, they would not be required to take notice that the legislature in such an event would make no provision for the giving of a bond by the treasurer for the extended term. The sureties had a right to take notice of the law as it existed, and to contract with reference to the law as it existed. That is, the law which would naturally be in their minds when they entered into the contract. And the idea that they would at such a time enter into a speculative calculation of what the law might be in the future, and shape their contract with reference to such possible change, is a strained one.

"The law at that time made the office one of a definite term; that term was two years; and the sureties had a right to, and no doubt did, take that law into consideration, and that was the law that was imported into their contract. There is no doubt that the central idea was that the term was for two years. This was the law; this was the ordinary state of affairs, and the ordinary time for which bonds for county officers were given. A man might willingly go on a bond for two years who would hesitate or absolutely refuse to go on for a longer period." (Page 550.)

We think the view taken by both the referee and the trial court as to the non-liability of the sureties is in accordance with sound reason as well as with the weight of authority. The question as to the sheriff himself, however, must be decided upon other considerations. While the petition necessarily states facts sufficient to constitute a cause of action against him for the violation of his official duty, if he is to be held in this proceeding it must be upon the bond itself, since it is only by reason of declaring upon that that the plaintiff was able to proceed against him and the bondsmen in the same action. He stands upon a very different footing from that of the sureties. He can invoke no liberality of construction or leniency of treatment. Moreover, while the bond was in a sense a contract even as to him, he executed it in compliance with the

statute, as a prerequisite to his induction into office. It was on his part a mere acknowledgment of obligations which the law devolved upon him. The extension of his term was a benefit conferred rather than a burden imposed upon him. Unlike the sureties, he had it in his power to end his responsibility at any time by resignation. He could not have taken the office without having executed the bond, and his continuing to act as sheriff was a constantly renewed assertion of its vitality. Notwithstanding the exemption of the sureties, the principal cannot be heard to say that his own liability upon the bond had ceased while he was in effect asserting a right under it.

The judgment is affirmed.