No. 30,352.

The Centerville State Bank, *Appellee*, v. The National Surety Company, *Appellant*.

(8 P. 2d 361.)

Opinion filed March 5, 1932.

*Douglas Hudson,* of Fort Scott, and *Henry L. Jost,* of Kansas City, Mo., for the appellant.

*John A. Hall,* of Pleasanton, for the appellee.

The opinion of the court was delivered by

Sloan, J.: This was an action brought to recover on a fidelity bond. It was removed to the federal court, where on a trial the court found, and rendered judgment, in favor of the defendant. (*Centerville State Bank v. National Surety Co.*, 27 F. 2d 552.) It

was appealed to the circuit court and there held that it was not removable and remanded to the state court for trial (Id., 37 F. 2d 338), which resulted in a judgment in favor of the plaintiff, from which the defendant appeals.

Lester C. Brownback was, on July 8, 1919, president of the Centerville State Bank, and on that date the appellant issued to said bank a fidelity bond, which was renewed from year to year to and including January 8, 1926, in the same form. On January 10, 1923, Brownback was elected cashier of the bank, and one John C. Dexter was elected president. Although the bond was continued in force by the payment of the annual premium until January 8, 1926, the appellant was not notified of the change in the official position of the bonded. The court found as a fact that the defalcation complained of took place during the time Brownback was cashier.

The principal question presented to this court is whether the change made in the officers of the bank, whereby Brownback ceased to be president and became cashier, relieved the appellant from any further liability on the bond where no notice was conveyed to it of the change. The answer to this question must be found in the construction of the contract and its application to the situation. The surety bond is, in part, as follows:

"The National Surety Company (surety), in consideration of the payment of the premium of twenty-five and 00/100 dollars ($25), and payable on the first day of June, during each and every year that this bond shall continue in force, hereby agrees to make good within sixty (60) days after receipt of proof satisfactory to it, any loss, not exceeding ten thousand dollars ($10,000), which Centerville State Bank, employer, may sustain by reason of any act of larceny or embezzlement of Lester Cleveland Brownback, employee, as president in the employer's service, committed after the 1st day of June, 1919, and before the termination of this bond, subject to the following express conditions; which shall be conditions precedent to any recovery hereunder:

"1st. . . . All statements which the employer has furnished the surety, concerning the employee or his duties or accounts are warranted by the employer to be true, and if any of the statements be false or untrue, this obligation shall be null and void and of no effect from the beginning."

Here follows paragraphs numbered two to nine, inclusive, which deal with the question of notice and other obligations to be performed on the part of the bank in the event of any knowledge or notice on its part of the breach of any of the conditions of the bond. The bond is dated July 8, 1919. It will be noted that the bond on its face refers to the statement made in the application on which the

bond was issued, and this makes it necessary to examine into the application, first of which is the employee's statement:

"EMPLOYEE'S STATEMENT.

"To the National Surety Company, New York City:

"The undersigned hereby agrees that you may indemnify the employer hereinafter named in any amount the employer may desire in favor of Centerville State Bank (employer) to such extent and in such form as may be agreed upon between you and the employer in respect of the acts of the undersigned in said employer's service as president at Centerville in the state of Kansas or in any other position in the employer's service to which the undersigned may be appointed, and hereby affirms that the following answers are the truth without reservation, and that they are made to induce the National Surety Company to indemnify the said employer as herein above mentioned."

Here follows a list of thirty-two questions which the employee is required to answer, dealing with his age, nationality, family relations, former employment and property. Among others, the following questions are asked and answered:

"9. What is the nature of this employer's business? Banking.

"11. What are your duties in this position? General bank duties. What experience have you had relative to the duties and accounts of this position? Assistant cashier 2½ years.

. . . . . . . . . . . . . . .

"For good and valuable considerations, the undersigned hereby agrees to indemnify and save harmless the said National Surety Company from and against any and all loss, damage, fees, or expense which it may incur or sustain by reason of having agreed to indemnify as hereinabove set forth against the acts or omissions of the undersigned in the positions mentioned and referred to, or in any other position that may be filled by him, and to make good and reimburse to the company all sums of money which it may pay or become liable to pay in consequence of any such agreement or indemnity."

This is followed by the employer's statement, which consists, among other things, of the following:

"Questions to be answered over the signature of the president or the vice president of Centerville State Bank in connection with the request which we have received to indemnify you against loss which you may sustain not to exceed $10,000 through certain acts of Lester Cleveland Brownback (hereinafter referred to as the employee) in your employ at Centerville in the position of president."

Here follows twenty questions, many of which are subdivided, in which the names of the directors of the bank, the kind of bank, the time of the meeting of the board of directors, the salary of the employee, the interest of the employee in the bank, his financial relation to the bank, when the bank is examined, when depositors' pass

books are balanced, and other questions relating to the handling of the business of the bank are required to be and are answered. Among others, are the following:

"4. (a) How many employees are there in the bank besides above-named employee, and what are their respective positions? (a) One, the cashier.

"(b) Will they be required to give corporate bond? (b) Yes.

"5. Is the employee permitted to make loans or allow overdrafts or discounts without consulting the president or the vice president? If permitted to do so, please state under what limitations. No.

"6. To whom does employee report loans, overdrafts and discounts, and how often? Board of directors; also the state bank commissioner; report to each quarterly.

"8. Is the president or the vice president in daily attendance at the bank? Yes.

"13. Will employee have authority to sell or negotiate securities held or owned? Yes.

"14. Will employee's time be devoted exclusively to bank? Yes.

"The foregoing answers are warranted to be true, and the truth of each thereof is a condition precedent to the creation of any liability under the indemnity desired, or any other indemnity that may be granted by the National Surety Company, to the undersigned upon the above-named employee in said position or under any renewal or continuation of such indemnity."

It is earnestly contended by the appellant that it must be presumed the contract was made in view of the duties of the president and cashier as defined by statute, and that the change from president to cashier so augmented the obligations of the surety that the bond is no longer binding. Is this contention supported by the terms of the contract and circumstances under which it was entered into? If it can be said that the parties in entering into the contract had in contemplation that the president would perform only the duties defined by law, the conclusion contended for is sound. On the other hand, if the parties took into consideration the duties which the bonded actually performed, and not theoretical duties; then the conclusion must necessarily be unsound. In other words, were the parties dealing with facts or theories? The answer is found in the application. The appellant was not content to rest upon the information that the bonded was the president of the bank and let the duties be defined by law. It inquired into the minute details of the authority, duties and responsibilities of the bonded, and the manner in which the bank was operated and its business handled. The plain language of the bond is to the effect that it is issued on the information furnished in the application. This information deals with facts and not theories. The appellant

is a compensated surety. It prepared the contract, and the language used is of its choosing. It is in the nature of a contract of insurance, and the rules applicable for the construction of insurance policies are applicable to it. If, looking at all the provisions, the bond is fairly and reasonably susceptible of two constructions, one favorable to the bank and the other favorable to the surety company, the former, if consistent with the object for which the bond was given, must be adopted. (*State v. Construction Co.*, 91 Kan. 74, 136 Pac. 905; *Bank v. Colton*, 102 Kan. 365, 170 Pac. 992.)

The appellant assumed the responsibility of inquiring into the facts relating to the employment of the bonded, and it will be observed from the context of the bond and the application that it did not concern itself particularly about the official title, and no reference is made to statutory duties, but the whole matter is treated as an employment and the duties and responsibilities relating thereto. It knew that the bonded would be the manager of the institution, assisted only by a cashier, with full authority to sell and negotiate securities held by the bank, and to do a general banking business, subject only to the limitation imposed on him by the board of directors and the banking department. This included the whole field of banking and all the duties and responsibilities incident thereto, and it was such an employee which the appellant undertook to insure against any act of larceny or embezzlement. It is clear that under such circumstances the title president or cashier was a mere incident in the contract, and was of little consequence to the appellant so long as it was fully advised on the facts relating to the duties and responsibilities of the employment. This is a fair construction of the contract and carries out the purpose for which it was written. We hold, under the circumstances of this case, that the change in the title of the bonded did not, standing alone, vitiate the bond unless such change materially augmented the duties and responsibilities of the bonded and thereby increased its risk.

On this question the court found as a fact that Brownback, while president of the bank, was in actual charge of the assets of the bank and had authority to make loans, receive deposits, buy and sell commercial paper and securities, receive liberty bonds from customers for safe keeping, pay checks, receive money from customers of the bank to be transmitted to the county treasurer for taxes, write checks on the bank's funds and draw drafts on the bank's correspondent banks in other cities. The court also found that during

the period he was cashier of the bank he had the same responsibilities, performed the same duties and exercised the same authority. Consequently the change in the title of the employment in no way augmented the duties and responsibilities of the bonded, and in no way increased the liability of the appellant.

In the case of *Rollstone National Bank v. Carleton*, 136 Mass. 226, the court said:

"In an action against the sureties upon a bond, given to a bank, and conditioned for the faithful discharge by C. of 'all his duties as clerk of said bank,' and against the misappropriation of any of the funds of the bank 'which may come under the care or control of said C. as clerk,' the evidence showed that C., during the whole term of his employment, performed the duty, to some extent, usually performed by a teller, of paying and receiving money over the counter of the bank. It was found as a fact that 'the duties as clerk,' contemplated in the bond, did not mean merely the duties of a bookkeeper, but that they embraced the duty of receiving and paying out money at the counter of the bank. *Held*, that the defendants were not entitled to a ruling, as a matter of law, that there had been such a change in the duties of the clerk as to discharge them from liability." (Syl. ¶ 1.)

In the case of *Amer. Telegraph Co. v. Lennig*, 139 Pa. 594, the court said:

"Nor will the imposition of additional, distinct and consistent duties upon the principal, or his appointment to an additional office, his original office still being retained, necessarily relieve the surety from his obligation, if the new duties, or the new office, have no such connection with the old as to interfere with or affect the original employment." (Syl. ¶ 5.)

We think the rule is that where the authority, duties and responsibilities of the employment are not materially changed or augmented so as to increase the risk, the surety is not discharged. (25 C. J. 1097; 43 A. L. R. 1000.)

We hold that the risk was not augmented by the change in the official designation of the bonded, and that the appellant is liable for the breach of the condition of the bond.

It is next contended by the appellant that the findings of fact, and especially the findings relating to the embezzlement of the proceeds of liberty bonds, are not supported by the evidence. The findings of the trial court are quite voluminous and set forth in detail the transactions of the bonded. We have examined the evidence —no good purpose could be served in setting it out herein—and find that there is substantial evidence supporting the findings, and that the findings support the judgment.

The judgment is affirmed.