No. 31,069.

THE STATE OF KANSAS, ex rel. L. E. WELTMER, County Attorney of
Jewell County, *Appellee,* v. ROBERT A. MOORE and NATIONAL
SURETY COMPANY, *Appellants.*

(20 P. 2d 518.)

Opinion filed April 8, 1933.

*A. Teeple, George E. Teeple,* both of Mankato, and *James M. Moore,* of
Kansas City, Mo., for the appellants.

*Manford Holly,* county attorney, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action against Robert A. Moore, ex-
probate judge of Jewell county, and his surety, for his failure to
account for certain moneys which came into his hands during his
incumbency of the office of probate judge.

After the issues were formulated by pleadings, the material facts
were agreed to by stipulation.

It appears that one A. Teeple was probate judge of Jewell county from 1914 until 1923. Teeple was succeeded by one John W. Ross, who served until 1929, at which time he was succeeded by defendant Moore. Certain moneys came into the hands of Teeple informally, which he delivered to Ross, his successor; and these moneys, with additions thereto, were delivered by Ross to defendant. It is these moneys and other items of similar sort which defendant Moore received during his incumbency of the office, aggregating $3,635.49, which he failed to account for and which got him into the toils of the civil and criminal law and eventually landed him in the penitentiary.

In the course of the present litigation the state has collected from Moore the sum of $709.02, and the defendant surety company has paid $2,120.63 on account of Moore's defalcations. Of the balance of $805.84 due the state for the benefit of whoever is entitled thereto, the principal legal question of present concern is whether the defendant surety is liable therefor. The trial court ruled affirmatively, and judgment was entered accordingly.

The surety company appeals, contending that Moore did not receive the various items composing this balance of $805.84 by virtue of his office as probate judge, and, in consequence, defendant is not liable therefor under the bond it executed to insure his official integrity. The pertinent provision of the bond reads:

"Now, therefore, if the said Robert A. Moore shall faithfully perform all the duties of his said office required of him by law and faithfully apply and pay all moneys and effects that may come into his hands in the execution of the duties of his said office, then the above obligation to be null and void, otherwise to remain in full force."

This obligation of the bond was in accord with the terms and conditions prescribed by the statute. (R. S. 19-1101.) To determine the liability of the surety for Moore's breach of his statutory duty "for the faithful application and payment of all moneys and effects that may come into his hands in the execution of the duties of his office," we must scrutinize the particular items constituting the sum which the state seeks to recover from the surety company.

In 1923 the retiring probate judge, Teeple, paid over to Ross, his successor, $307.25. This sum was the total of certain unclaimed distributive shares and bequests paid into his hands by executors

or administrators. Ross, in turn, delivered this sum to Moore. In 1926 the district court of Jewell county made an order that certain moneys of the estate of Emily Diamond be paid over to Probate Judge Ross for distribution. Ross distributed all of these sums except $93.66, and this balance he turned over to Moore, his successor. During Moore's incumbency certain executors and administrators turned over to him certain unclaimed distributive shares of estates being administered under his official supervision; also one item due as an inheritance tax on an estate, and an item he had received as rent of an estate. These various items aggregated something over $400. This sum plus the amounts delivered to him by his predecessor made up the amount of $805.84, for which judgment against the surety was entered.

Turning now to the law of this case: No statute can be cited which authorized or permitted the probate judge to receive any of these moneys into his own hands. Under the statute all distributive shares of estates unclaimed for one year must be paid over to the county treasurer by the executor or administrator who has them in charge. (R. S. 22-932.) It is therefore obvious that the moneys ($307.25) handed over by Probate Judge Teeple to Probate Judge Ross, and by him in turn to defendant Moore, did not come into the hands of Moore "in the execution of the duties of his office" as specified in the official bond to which the defendant surety company affixed its signature.

Touching the balance of $93.65 left in the hands of Probate Judge Ross after he had disbursed certain sums on order of the district court (however appropriate such a method of disbursing such moneys may have been under the circumstances, of which the record reveals nothing), it is perfectly obvious that Ross did not receive that money from the district court in his official capacity as probate judge, but merely as a citizen in whom the district court had confidence. If we should turn aside from the record to consider the case of *State Bank v. Diamond*, 119 Kan. 294, 297, 239 Pac. 970, for further light on this item, it becomes clear that no money was turned over to Probate Judge Ross by order of the district court, but merely that certain claims were adjudicated and the cause remanded to the probate court with instructions to proceed with a settlement pursuant thereto. Such an order did not mean for the probate judge to take physical possession of any money of the Diamond estate,

pay it out with his own hands, put the balance in his pocket until he went out of office and then hand it over to his successor. It is therefore apparent that the undistributed balance of $93.85 which Moore received from Ross did not come into his hands as probate judge, and consequently his surety is not liable therefor.

These observations likewise dispose of the items of money which Moore received from various sources while he was probate judge. The administrators and executors in charge of estates under his official supervision had no right to intrust any money of estates in their hands to Moore, either as probate judge or otherwise. It was their bounden duty to care for and dispose of the moneys in their hands as the law directs. That is the reason they were serving as administrators or executors. Aside from certain trifling items for court costs, where the probate judge acts as his own clerk, and for marriage licenses and the like, the law does not contemplate that the probate judge shall come into actual possession of moneys by virtue of his office. The law does not contemplate that he shall act as official custodian of moneys or estates; and sound official policy and judicial ethics will not permit him to serve even in a private capacity in financial matters which by any possibility may require his judicial consideration. Every dollar in money and every bit of personal property belonging to an estate under administration belongs in the hands of an administrator or executor until disbursed to those entitled thereto, and the probate judge cannot relieve these functionaries of their responsibility by taking into his own hands any money or property of estates intrusted to them and for the faithful accounting of which they themselves are officially bound.

It therefore follows that in its main aspects the judgment of the district court was erroneous. In the stipulation of parties it is agreed that the sum of $61.05, being the total of certain fees received by Moore in his official capacity and for which he did not account, does constitute a liability on his official bond. (R. S. 1931 Supp. 28-113.) By stipulation also it was agreed by counsel for the litigants that a mere modification of the judgment with directions to reduce it to this amount should not carry any costs against the surety company.

In this appeal no question is raised against plaintiff's right to any of the moneys for which defendant Moore failed to account. But on this point see *State v. Spaulding*, 24 Kan. 1; *State v. Patterson*,

66 Kan. 447, 71 Pac. 860, syl. ¶¶ 5, 6; *State, ex rel., v. City of Stafford,* 99 Kan. 265, 161 Pac. 657, syl. ¶ 3; *State, ex rel., v. Bradbury,* 123 Kan. 495, 500-502, 256 Pac. 149.

The judgment of the district court will therefore be modified by reducing it to $61.05, and when so modified it will be affirmed; and the costs in this court will be charged to appellee as per stipulation. It is so ordered.