No. 32,135

THE STATE OF KANSAS, ex rel. FRANK HAHN, County Attorney of Phillips County, *Appellee*, v. AMERICAN SURETY COMPANY OF NEW YORK, and WILBER C. WHITNEY, *Appellants*.

(46 P. 2d 611)

Opinion filed July 6, 1935.

*Dan Hopson, W. A. Barron,* both of Phillipsburg, *Charles L. Hunt, Frank C. Baldwin,* both of Concordia, and *A. J. Colt,* of Kansas City, Mo., for the appellants.

*A. W. Relihan, T. D. Relihan,* both of Smith Center, *Frank Hahn,* county attorney, and *Theo. Varner,* of Independence, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This is an appeal from a judgment impressing a liability on the surety on the official bond of a probate judge for defalcations of that functionary in his official capacity as county judge.

The facts developed by the pleadings and by stipulation of counsel were to this effect:

In 1925 the board of county commissioners of Phillips county established a county court as authorized by R. S. 20-801 *et seq.* At the general election in 1928 the defendant, Whitney, was elected probate judge. He gave the statutory bond with defendant, American Surety Company of New York, as surety thereon; and in January, 1929, he was inducted into the office of probate judge. At the same time Whitney assumed the duties of county judge. In November, 1930, he was elected to succeed himself as probate judge; gave bond with the same surety as before; and continued in the offices of probate judge and county judge until January 9, 1933.

Plaintiff's petition set out four causes of action; the *first* related to a shortage in Whitney's accounts as probate judge during his first term, in the sum of $130.90; the *second* alleged a shortage in his accounts as county judge during his first term, in the sum of $19.60; the *third* alleged a shortage in his accounts as probate judge during his second term, in the sum of $391; and the *fourth* alleged a shortage in his accounts as county judge during his second term, in the sum of $651.15.

Plaintiff prayed judgment for the aggregate of these sums and interest thereon.

The defendant surety company filed a special demurrer to the second and fourth causes of action on the ground that Whitney's official bond as probate judge did not cover shortages in his accounts as county judge.

The demurrer was overruled, and the case is brought here for review.

The bond to qualify for the office of probate judge binds that officer and his sureties in a sum not less than $2,000 nor more than $25,000, as fixed by the county commissioners, "conditioned for the faithful performance of the duties required of him by law, and for the faithful application and payment of all moneys and effects that may come into his hands in the execution of the duties of his office." (R. S. 19-1101.)

Such a bond was the one sued on in this case. It goes without saying that the bond is a binding obligation of Whitney's surety for his alleged defalcations in the first and third causes of action. Indeed the defendant surety does not contend otherwise.

But do the surety obligations of Whitney's bond as probate judge extend to his alleged financial delinquencies as county judge? The bond reads:

"STATE OF KANSAS, PHILLIPS COUNTY, ss.:

"W. C. Whitney, chosen probate judge of Phillips county, and the American Surety Company of New York, his sureties, do hereby jointly and severally agree to pay to the state of Kansas, five thousand ($5,000) . . . dollars.

"Whereas, the above bounden W. C. Whitney was elected to the office of probate judge, on the 4th day of November, A. D. 1930, now therefore, the condition of this obligation is such, that if the said W. C. Whitney, shall honestly and faithfully perform and execute the duties of said office required of him by law, during his continuance therein, by virtue of said election, and pay over to the proper person or authority all moneys that may come into his hands by virtue of said office, and deliver to his successor all books, records, papers, and other things belonging to his said office, which may be so required by law,

then the above obligation shall be void, otherwise to be and remain in full force and effect.

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

[Signed]     "AMERICAN SURETY COMPANY OF NEW YORK,

By W. R. EVANS.

Sureties:     (W. R. EVANS), *Resident Vice-President.*"

It will be noted that the bond fully conformed with the terms prescribed by the statute. It was the duties of the office of probate judge which the principal and surety bound themselves that Whitney would faithfully discharge. It was the moneys which might come into Whitney's hands by virtue of *said* office—the office of probate judge—which Whitney was to pay over to the proper person or authority.

The probate court is a tribunal created by the state constitution. Its probate jurisdiction extends to the care of estates of deceased persons, minors, and persons of unsound mind. An additional jurisdiction in habeas corpus, not related to matters of probate but not incompatible therewith, is also conferred upon the probate court by the constitution. (Art. 3, § 8.) The statutes which deal with the powers and duties of the probate court are largely elaborations of the constitutional functions conferred and imposed upon the probate judge.

The county court is an altogether different sort of tribunal from the probate court. Its jurisdiction is both civil and criminal as prescribed in R. S. 20-808. The legislature considered that a person of suitable character and capacity to hold the office of probate judge would likely be a fit person to hold the office and exercise the functions of judge of the county court. It might have conferred the office of county judge on any other county officer whose duties would not be incompatible therewith. (*Dyche v. Davis*, 92 Kan. 971, 977, and syl. ¶ 2, 142 Pac. 264.) There was a stroke of economy as well as of compatibility and expediency in conferring the office of county judge on the probate judge, as the prescribed salary for the additional office is thereby held down to a minimum. (R. S. 20-804.) But the legislature makes it clear that it is an additional office and an additional salary which it is conferring on the probate judge:

"The judge of the county court shall receive as compensation for his services as such county judge a salary equivalent to one half of his salary as probate judge, which shall be allowed by the county commissioners and paid out of the county treasury; such allowance shall be in addition to his salary as probate judge." (R. S. 20-804.)

The act creating the county court, or, more strictly, the act au-

thorizing the creation of the county court (R. S. 20-801 *et seq.*), does not require the county judge to give bond to insure his official fidelity, but that fact is not unique in Kansas law. Some of our petty magistrates are required to give bond. (R. S. 80-205, 13-601, 15-502, 20-1520.) In cities of the second class it is optional with the governing body whether the police judge shall give bond or not. (R. S. 14-205, 14-801.) With one exception, Atchison (R. S. 20-1520), the city judges of our principal cities are not required to give bond although the clerks and marshals of the city courts must do so. (R. S. 20-1621, 20-1622, 20-1702, 20-1706, 20-1823, 20-1928, 20-1929, 20-2022, 20-2023.) The judges of the state's more important courts do not give bond, the assumption being that their fidelity rests most securely on the binding force of *noblesse oblige.*

But since the statute does not exact an official bond from the county judge, what shall we say to the plaintiff's contention that the bond he gave for his fidelity in the discharge of his duties as probate judge should be extended by judicial interpretation to cover his fidelity in the discharge of his duties as county judge?

In our own case of *State, ex rel., v. Moore*, 137 Kan. 396, 20 P. 2d 518, it was held that the surety on the bond of a defaulting probate judge was not liable for moneys irregularly entrusted to his keeping but which it was no part of his official duty to receive and dispose of. The instant case is not strictly analogous to the Moore case, but we think the same reasoning applies. The moneys which came into defendant Whitney's hands as county judge did not come into his hands by virtue of his office as probate judge, nor was the probate court in any way concerned with them.

Well-considered decisions in other jurisdictions seem to be agreed that where two offices are held by the same person, the fidelity bond which he gives in relation to one office does not cover any breach of duty in the other office. Thus in *City of San Bruno v. National Surety Co.*, 119 Cal. App. 27, the city clerk, who also served as deputy marshal in the collection of taxes, embezzled some of the moneys collected by her in her latter capacity. In an action against the surety on her official bond as city clerk, the surety's demurrer to the city's complaint was sustained. In affirming the judgment of the superior court, the appellate court held:

"When a person holds two distinct offices the bond of one does not cover his duties in the other, even though the holder of the first office is *ex officio* the holder of the second, nor are his bondsmen answerable for the dereliction of duties not pertaining to the office for which the bond was given." (Syl. ¶ 3.)

In *State, for use, etc., v. Thomas,* 88 Tenn. 491, the state treasurer of Tennessee held *ex officio* the office of insurance commissioner. In the latter capacity it was charged that he had committed some irregularities, and an action was brought on his official bond as state treasurer. The supreme court ruled:

"The state treasurer's bond does not cover, and his sureties thereon are not bound for, that officer's acts or defaults as *ex officio* commissioner of insurance."

In *Territory of Wyoming v. Ritter,* 1 Wyo. 318, the headnote states the case and the ruling:

"Under the statutes of the territory of Wyoming, which provides that the judges of probate of the respective counties shall be *ex officio* county treasurers of the same, an undertaking given for the faithful performance, etc., of the duties of probate judge, is not an undertaking for such performance of duties of county treasurer by the same person, and the sureties on the bond for the former are not liable for the defaults and malfeasance of such probate judge while acting as county treasurer. To make a person an *ex officio* officer, by virtue of his holding another office, does not merge the two into one."

In Arnold's Suretyship and Guaranty, 410, it is said:

"It is becoming common to entrust the same person with duties pertaining to two or more offices. The question arises whether the bond given on his selection for one office covers defaults occurring while discharging other duties. It is conceivable that the language of the undertaking might cover a default of the principal in any capacity. But ordinarily this would not be true."

To the same effect are Throop on Public Officers, 252, 253, and 46 C. J. 1067.

It is no departure from the general rule we have been discussing where it is held, quite properly, that where additional official duties are subsequently imposed on a public officer, his official bond will cover any breach of these added duties, although the bond was executed before they were imposed. Thus in *Equitable Insurance Co. v. City of Newport,* 194 Ky. 363, it was.held:

"Official bonds cover not merely duties imposed by existing laws but duties imposed by subsequent laws, but the rule is confined to those cases where the new duties are of the same general nature and character, and therefore belong to and are connected with the office, and does not apply where the new duties are disconnected from and foreign to the office." (Syl. ¶ 1.)

In *Community High School·v. Muller,* 119 Kan. 216, 237 Pac. 650, one Copeland was elected to the office of trustee of a high school in Reno county. The statute required a fidelity bond which he gave. The same statute authorized the board of high-school trustees to choose one of their number as treasurer. Copeland was chosen treasurer and gave the requisite additional statutory bond to insure his

fidelity as treasurer of the board of trustees. Copeland became a defaulter in a large amount. The sureties on his bond as treasurer of the board of trustees paid. The sureties on his bond as high-school trustee declined to pay. This court held they were liable. That case is readily distinguishable from the one at bar. Copeland's office of treasurer of the board of trustees was merely incidental to his office as trustee. The offices were closely related to each other. He could not embezzle the funds of the high school without breaching the bond he had given for the faithful discharge of his duties as a high-school trustee. (Mechem's Public Offices and Officers, § 285.) As we have seen, however, there is no integral relationship between the offices of probate judge and county judge; and it must be held that the shortages in Whitney's accounts as county judge cannot be recouped out of his official bond as probate judge.

It follows that insofar as the judgment of the trial court affects the defendant surety company it must be reversed and the cause remanded with instructions to enter judgment in its behalf.

It is so ordered.