No. 32,621

N. J. WOLLARD, Administrator de bonis non of the Estate of CHARLES WAUCH, Deceased, *Appellant*, v. CLAUDE L. PETERSON and the FIDELITY AND CASUALTY COMPANY OF NEW YORK, *Appellees*.

(56 P. 2d 476)

Opinion filed April 11, 1936.

*E. E. Martin*, of Kansas City, for the appellant.

*Fred Robertson, Edward M. Boddington, J. O. Emerson* and *L. R. Gates*, all of Kansas City, for the appellees.

The opinion of the court was delivered by

HUTCHISON, J.: The appeal in this case is by the plaintiff from a judgment rendered by the trial court in favor of the defendant in an action brought by plaintiff as administrator *de bonis non* of the estate of Charles Wauch, deceased, against his predecessor, Claude L. Peterson, and his bondsman, the Fidelity and Casualty Company of New York, for the sum of $4,033.57 with interest thereon, together with the sum of $1,500 cost and expense to the administrator *de bonis non* in collecting the same.

The petition in this case is the third amended petition, and it alleges the appointment of Claude L. Peterson as administrator of said estate on August 1, 1928, on which date he furnished and filed a bond as administrator, signed by the Fidelity and Casualty Company of New York, in the sum of $500. Two days later after filing an inventory he filed another bond signed by the same company for $9,500, thus making a total bonded security of $10,000.

The petition alleges the filing of a final account on which an order was made by the probate court. That later complaint was made to the probate court that the administrator had failed to pay the creditors and others entitled to the sums stated in the account and order of the court, and after due notice and opportunity for hearing the said Claude L. Peterson was removed and a copy of the order of removal was sent to the Fidelity and Casualty Company, his surety, and the plaintiff was appointed as his successor.

The petition further alleges that during the administration of Peterson a nuncupative or oral will of the deceased was admitted to probate, and the probate court did order and direct said Peterson be not discharged, but continue to act as administrator. That he did distribute to one party according to the terms of the order the sum of $2,000. That by reason of the admission of said will to probate and the order that the said Peterson should continue as the administrator of said estate with the will annexed, he was thereafter referred to as administrator with the will annexed, but he never filed any pleadings, report or document in said court or cause except as "administrator," and that he held the assets of the estate by virtue of his trust as an administrator. The petition further alleges that no additional responsibility was thrust upon him, that he continued to administer the same assets and to pay the premiums on said bonds to the casualty company. The petition further alleges that the plaintiff has demanded of both Peterson and his bondsmen the assets of the estate and has failed to receive them and that plaintiff has no plain, adequate and complete remedy in the probate court. Attached to the petition are the copies of the two bonds and other documents mentioned in the petition.

Separate answers, which are substantially the same, were filed by Peterson and the casualty company. The answers first admit and call attention to the language of certain exhibits attached to the third amended petition where Peterson is mentioned in different documents and proceedings as administrator with the will annexed,

and particularly refer to the following language in the order of the probate court when the oral will was admitted to probate: "and that Claude L. Peterson continue as administrator of said estate with the will annexed," and defendants admit that said Peterson did continue after such order to act as administrator of said estate with the will annexed under the trust conferred upon him by such order and did pay to Jennie Stempski the sum of $2,000.

The answers contain general denials and a number of special denials and allegations, among which are that the assets of the estate of which Peterson was the administrator were all paid out by him under orders of the probate court or turned over to his successor in office, Claude L. Peterson, administrator with the will annexed, immediately after the appointment of said administrator with the will annexed. That plaintiff's cause of action is barred by the five-, three- and two-year statutes of limitations. That the residuary legatees under the will of the deceased prepared and filed two actions in the probate court and one in the district court against Peterson and his bondsmen to recover the amount they claimed to be due them under the order of the probate court, and that said actions are still pending and undetermined. That in said actions and in a number of other papers and documents in connection with said estate the administrator is referred to as the administrator with the will annexed. That in the written demand served on Peterson by the plaintiff before bringing this action he is referred to as formerly administrator with the will annexed. The prayer is that this action be abated as to the amounts due the residuary legatees because of their former actions, that the action be barred by the statutes of limitations and the plaintiff be estopped from claiming Peterson was not administrator with the will annexed, and from claiming the assets were in the hands of anyone other than Peterson as administrator with the will annexed, that the residuary legatees be adjudged to have made an election that the amounts due them were from Peterson as administrator with the will annexed and that the plaintiff has no legal or equitable interest in any of the money ordered to be paid to them, and that defendants recover their costs herein. Both answers were verified by an attorney.

A separate reply was filed to each answer, consisting of a general denial and special denials as to the correctness of the statements made in the answers concerning the pleadings and proceedings had in the estate matters and as to any request, demand or order remov-

ing Peterson as administrator and appointing him as administrator with the will annexed when the will was admitted to probate, that defendant Peterson and his bondsmen are estopped from so claiming without such an order, and that if Peterson did pay all the assets over to himself as administrator with the will annexed it was fraudulently concealed from the probate court and in violation of the terms of his bonds.

The case was tried to the court without a jury. No findings of fact or conclusions of law were made. The following is the finding in the journal entry of judgment:

". . . and now on this 29th day of May, 1935, the court having heard the evidence and arguments of counsel, and being fully advised in the premises, finds for the defendants and against the plaintiff."

The evidence was all documentary except the oral testimony of three witnesses. The plaintiff testified as to the making of an oral and written demand upon Peterson, and while there was an objection to it there was no oral evidence contradicting or modifying it. The plaintiff also testified as to having received after his appointment four and one half shares of building and loan stock from Brown, an attorney for some of the residuary legatees. This was not contradicted. Plaintiff also testified as to the amount in his judgment of a reasonable attorney fee for plaintiff's attorney and the approximate expense of the suit. Hugh E. Brownfield, an attorney, testified as to the amount of a reasonable attorney fee for plaintiff's attorney in this case. This was all the testimony as to a reasonable attorney fee. Gates testified that he, as attorney for Peterson, delivered the four and one half shares of building and loan stock to Brown and identified a receipt as to the same. This is all the oral testimony in the case. Serious objections were made to most of it, but there is nothing conflicting in the parts admitted. The abstract and counter abstract contain a total of 115 printed pages.

The controversy, it will readily be observed from the above statement of the pleadings, centers around what occurred in probate court when the nuncupative or oral will was admitted to probate, and the frequent references to Peterson in subsequent proceedings as administrator with the will annexed.

R. S. 22-325 provides that—

"If, after granting letters of administration as of an intestate estate, a will of the person deceased shall be duly proved and allowed, the first administration shall be revoked and the executor or administrator with the will an-

nexed shall be admitted to prosecute or defend any suit, proceeding or matter commenced by or against the original administrator." ·

R. S. 22-309 provides that—

"Every person who is appointed administrator with the will annexed shall, before entering on the execution of his trust, give bond in like manner and with like condition as is required of an executor."

The order of the probate court admitting to probate the nuncupative will, after doing so and finding the person named by the deceased as his executor, was not a proper person to act as executor, continued as follows:

". . . . that the administrator heretofore, to wit, Claude L. Peterson, appointed in said cause, should continue as such administrator, with the will annexed and carry out the wishes of said deceased, according to law and as expressed in said will.

"It is, therefore, by the court considered, ordered, adjudged and decreed: That the nuncupative will of Charles Wauch, alias Charles Wach, as found herein, be and it is hereby admitted to probate, and that Claude L. Peterson continue as administrator of said estate with the will annexed."

There is nothing in the order of the probate judge about revoking the former administration or requiring the giving of a new bond, and no new bond was given.

Two preliminary matters are presented for our consideration. First, a motion to dismiss the appeal for want of jurisdiction, referring to R. S. 60-3306, which requires that a notice of appeal be filed with the clerk of the trial court stating that the party filing the same appeals from the judgment, order or decision complained of to the supreme court, and a copy of such notice must be personally served on adverse parties or their attorneys of record, and that "proof of such service shall be made by affidavit." The defect of which complaint is here made is that the proof of such service was not made by affidavit. It was only made by acknowledgment of the attorneys and their waiver of proof by affidavit. Appellees cite *Armour v. Howe,* 62 Kan. 587, 64 Pac. 42; *Toof v. Cragun,* 53 Kan. 139, 35 Pac. 1103; *Johnson v. Lander,* 140 Kan. 329, 36 P. 2d 1006, and other cases in support of their motion. The first case cited originated in a court not having jurisdiction of questions involving titles to real estate, and any appeal therefrom through the district court to this court was without jurisdiction of the subject matter. The second case cited was where the case made itself was lost. The last case above cited was not concerning the proof of notice, but the notice itself was not filed within the time prescribed by statute.

The affidavit is merely proof of service of the notice, and how much stronger can it be than the acknowledgment of service by an attorney of record and a waiver by such attorney of proof by affidavit? There is no question of this court having jurisdiction of the subject matter. The only question is as to the kind of proof of service of notice of appeal. In consideration of this same statute it was held in the closing paragraph of the case of *Thisler v. Little*, 86 Kan. 787, 121 Pac. 1123:

"We hold that when service can be made upon the appellee or his attorney of record within the state it must be made in the same manner as the service of a summons, unless service be waived or acknowledged." (p. 792.)

The motion to dismiss the appeal should be overruled.

The other preliminary point raised by appellees is that "inferences made by the court trying a case from facts proved are themselves findings of fact. A general finding in favor of the defendant is a finding of all inferences that may be drawn from proved facts, in the defendant's favor." Appellees claim that many of the particular facts offered in evidence were undisputed, but from them it was necessary to draw inferences of fact and that the general finding in favor of the defendants is a finding of all such inferences of fact in favor of the defendants, enumerating nine such probable inferences and citing the case of *Horn v. Elm Branch Coal Co.*, 141 Kan. 518, 41 P. 2d 751, quoting a paragraph therefrom on page 520 which closed as follows: "and this court is not authorized to interfere." This, however, was a compensation case where this court has limited jurisdiction as to facts, such limitation being expressed in R. S. 1933 Supp. 44-556. The jurisdiction of this court is not limited by statute as to the case at bar as it is in the compensation case cited. The term "inference" is defined in 31 C. J. 1181 as "a conclusion drawn by reason from premises established by proof."

In the case of *Mathewson v. Campbell*, 91 Kan. 625, 138 Pac. 637, it was said in the opinion on page 627:

"The decision of that court is, of course, entitled to consideration, but, as has been frequently decided, where the case comes before this court on written or documentary evidence practically as it was presented in the district court, this court must decide for itself what the facts establish, substantially as it would if the case was original in this court."

In the case of *Palmer v. Johnson*, 132 Kan. 161, 294 Pac. 874, which was an action to establish a claim against the receiver of a bank it was held:

"When the ruling of a trial court turns on documentary evidence this court can examine the documents and determine their meaning and effect, and is not bound by the interpretation given them by the trial court." (Syl. ¶ 1.)

In an action to quiet title (*Hollenbeck v. Lyon*, 142 Kan. 352, 47 P. 2d 63) the Palmer case, last above cited, was approved at the conclusion of the following sentence:

"Since the case comes to this court on the pleading and written stipulation of the facts, this court may examine the record and determine the legal questions presented with the same freedom the district court could do so." (p. 354. See, also, *Durham v. C. C. & M. Co.*, 22 Kan. 232, and *Snuffer v. Westbrook*, 134 Kan. 793, 795, 8 p. 2d 950.)

There is no question but that both the facts and the law of this case are subject to review upon appeal.

Appellant insists that the trial court erred in not finding and concluding, under the documentary facts presented, that Peterson and his bondsmen were liable under his bonds as administrator notwithstanding the order made when the nuncupative will was admitted to probate and the filing of the several actions against him as administrator with the will annexed because it was substantially the same office and the same duties to be performed without any increased liability thereunder.

The exhibits attached to the pleadings and the documents introduced in evidence show the following facts: Charles Wauch, a resident of Wyandotte county, died July 28, 1928. On August 1, 1928, Claud L. Peterson, then public administrator, upon his own application was appointed by the probate court as administrator of the estate of Charles Wauch, supposed at that time to be an intestate estate, and he on that day gave a bond in the sum of $500 signed by the Fidelity and Casualty Company of New York. Two days later Peterson, as administrator, filed in the probate court an inventory of personal property in the sum of $8,354.45 and that day gave an additional bond, without being ordered to do so, in the sum of $9,500, signed by the same casualty company, thus making a total bond of $10,000. In October, 1928, there was filed in the probate court a petition for the probate of a nuncupative will of said Charles Wauch. On February 13, 1929, the probate court admitted to probate this nuncupative will and at that time made the order as heretofore quoted in this opinion concerning the continuance of Peterson as administrator with the will annexed, without revoking his former appointment or requiring any addi-

tional bond to be furnished, and no new bond was ever given. There was later, in 1929, a contest filed in the probate court as to the nuncupative will, but it was dismissed before the commencement of this action.

The record shows Peterson was notified to file his final account and that on December 5, 1929, he did pay the court costs accruing from August 1, 1928, to December 5, 1929. On February 9, 1932, he filed a petition asking the court to permit him to amend the inventory he had filed on August 3, 1928, by omitting the reference to the real estate, and the same day filed his final account as administrator. On March 12, 1932, the residuary heirs filed objections to the final account. On May 4, 1932, Peterson filed an amendment to his final account which shows the distributive shares to be slightly different than they were in the former final account. On December 8, 1932, after publication, the court approved the amended final account and concluded the order as follows: "That upon his filing final receipts showing final distribution as aforesaid . . . and the payment of costs herein that the said Claude L. Peterson as administrator with the will annexed be discharged." Later actions were brought by the residuary legatees against Peterson and his bondsmen for their respective. shares. Two such actions were brought in the probate court and one in the district court which were pending when this action was commenced. No hearing was ever had in any of them and they were dismissed either prior to or during the trial of this action.

On the 21st of September, 1933, the residuary heirs applied to the probate court for an order removing Peterson as administrator with the will annexed. On October 4, 1933, after due hearing, the court ordered that Peterson be removed, and directed and ordered him to turn over to his successor all property and moneys in his hands belonging to the estate, and further ordered that the sureties and bondsmen of Peterson be notified of said removal, and it was further ordered that N. J. Wollard be appointed as administrator *de bonis non.*

On November 27, 1933, the present action was filed in the District court. On March 7, 1935, the third amended petition in this action was filed.

The bonds were in the usual form and ran to the state of Kansas, and each had the following concluding sentence:

". . . shall pay any balance remaining in his hands upon the settlement

of his accounts, to such persons as said probate court or the law shall direct, and shall deliver the letter of administration into the court, in case any will of said deceased shall be hereafter proved and allowed, then this obligation to be void, otherwise in full force and effect."

In all of the reports and inventories and documents filed by Peterson he designates himself as administrator. However, his attorneys sometimes signed documents for him as administrator and sometimes as administrator with the will annexed. Many of the documents filed by the probate judge after the nuncupative will was probated refer to Peterson as administrator with the will annexed. The third amended petition refers to him simply as administrator, and the plaintiff as administrator *de bonis non*.

There is no question but that, strictly speaking, according to the provisions of the statutes heretofore quoted herein, Peterson should have been removed as administrator, and he or someone else should have been regularly appointed as administrator with the will annexed and required to give a new bond, not for a different amount or with any different duties imposed except that the distribution be according to the provisions of the will. Neither Peterson nor his bondsmen point out any additional duty, burden or responsibility by reason of making the distribution under the will rather than under the intestate statute. Who, if any one, is confused or burdened by the use of the different terms in describing this office? It is the duty of the probate court to name the parties to whom the residuary assets are to be paid, and the only duty of the administrator or the administrator with the will annexed is to safely keep the funds until so directed by the probate court to pay them out, and then upon the filing of receipts to be released himself and have his bondsmen released.

The record shows that the only one that Peterson has paid was the only one who did not belong in both lists of beneficiaries. No danger is pointed out of his having to pay the assets of the estate a second time if he pays them to the plaintiff, since the actions by the residuary legatees are all dismissed.

We think the documentary evidence supports the plaintiff's contention and did not support the finding and judgment in favor of the defendant. Even if the administrator should have turned over the assets of the intestate estate held by him, as administrator, to himself as administrator with the will annexed—and we find no record of his doing so, being ordered to do so, or even asked to do

so—the duties and responsibilities of office would not be in any way increased nor the burden upon his bondsmen in any way changed.

In the case of *Centerville State Bank v. National Surety Co.*, 134 Kan. 858, 8 P. 2d 361, it was held:

"Where a bank, obtaining a fidelity bond for its president, sets forth in the application his authority, duties and responsibilities, and afterward the bonded is elected cashier and his authority, duties and responsibilities are in no way augmented, the surety is liable for breach of the condition of the bond while he is acting as such cashier." (Syl. ¶ 1.)

In the opinion it was further held:

"This is a fair construction of the contract and carries out the purpose for which it was written. We hold, under the circumstances of this case, that the change in the title of the bonded did not, standing alone, vitiate the bond unless such change materially augmented the duties and responsibilities of the bonded and thereby increased its risk." (p. 862.)

Of course if there were added duties, the bond would not cover them even under the same official capacity. (*State, ex rel., v. American Surety Co.*, 142 Kan. 246, 46 P. 2d 611.) Or if an officer assumes outside duties, the bondsman is not liable. (*State, ex rel., v. Moore*, 137 Kan. 396, 20 P. 2d 518.)

It was held in the case of *Community High School v. Muller*, 119 Kan. 216, 237 Pac. 650:

"The duties of a trustee of a community high school include his acting as treasurer, in the event he is so named, and his bond as trustee covers his duties as treasurer." (Syl. ¶ 1.)

Appellees cite the case of *Hudson v. Barratt*, 62 Kan. 137, 61 Pac. 737, where one had been appointed executor under a will which later in a contest was set aside and another party was named as administrator *de bonis non*. The former executor then presented to the probate court what was termed a final settlement of his executorship and asked to have the same considered and approved by the probate court. He also tendered into court and to his successor the balance of moneys that might be found due and any property in his possession belonging to the estate. Under these conditions the court held the action of the administrator *de bonis non* on the bond should not be allowed to interfere with the settlement pending in the probate court.

Appellees also cite in this connection *Kager v. Vickery*, 61 Kan. 342, 59 Pac. 628, and *Jonsson v. Erickson*, 108 Kan. 580, 196 Pac. 435, but in both of them one of the parties interested in the property had died during the proceedings and the principles involved

are not exactly applicable in the case at bar. They also concern collateral attack.

In 2 Woerner on American Law of Administration (3d ed.), 846, it is said:

"But the efficacy of bonds cannot be permitted to be endangered or destroyed by applying this doctrine to the transfer of the mere indebtedness of a fiduciary from himself in one, to himself in another capacity, so as to exonerate his sureties in the former capacity, and either throw the burden on another set of sureties, or entail the loss on the beneficiaries, without some overt act manifesting the transfer of actually existing assets."

In Throop on Public Officers, section 236, it is said:

"And, generally, where two offices are so far united that the person holding one, *ex officio* holds the other, and but one bond is given by him, the sureties in that bond are liable for his acts and omissions in discharging the duties of either, although the office, with respect to which the default occurred, is not named in the bond.".

In 40 L. R. A., n. s., 1136, it is said in the notes:

"The general rule is that 'where property has been received in one capacity, the change, in order to shift the responsibility of the sureties, must be evidenced by some overt act or express election to hold' the property in the other capacity.'"

Appellees contend this action is a collateral attack upon the proceedings in the probate court, citing, in addition to some of those cases above mentioned, a number of others, among which is *Cox, Adm'r, v. Kansas City,* 86 Kan. 298, 120 Pac. 553, which was an action by the public administrator against the city of Kansas City for damages on account of the death of a resident of Missouri caused by a defective condition of the street. The principal controversy was over the capacity of the plaintiff to maintain the action. The defendant claimed that the appointment of the administrator was wholly void because his application did not show all the conditions necessary to confer jurisdiction upon the probate court even if they in fact existed. The court said:

"We think the better rule is that the appointment of an administrator will not be held void upon a collateral attack merely because some jurisdictional fact is not affirmatively shown by the record, although the authorities are in conflict on the subject." (p. 300.)

Appellees refer to the probating of the nuncupative will in this case as necessarily making a revocation of the earlier appointment of administrator. The probate court, perhaps in technical disregard of the statute, did not regard the former appointment as revoked but continued with a modification as to beneficiaries.

We have difficulty in concluding that this action by the newly appointed administrator *de bonis non* against the former administrator on his bond, after his removal from office by the probate court, is in any way calling in question any of the proceedings of the probate court or in any way interfering with them. The matter here is the exact opposite of the situation in the Hudson case, where the defendant was urging a settlement in the probate court and had tendered the assets in his hands to his successor or the court when the action on the bond was commenced. We can readily see how that action on the bond was interfering with the jurisdiction of the probate court.

The appellees contend that the probating of the will was in effect the revocation of the appointment of the administrator, and consider the order that might have been made by the probate court in that connection as having been made, and that this action is a collateral attack on such an order which was not in fact made.

The case of *Ewing v. Mallison*, 65 Kan. 484, 70 Pac. 369, makes jurisdiction of the action of the probate court the basis before there can be any collateral attack. The first paragraph of the syllabus is as follows:

"The action of a probate court in appointing an administrator and issuing letters of administration is judicial in its nature, and is not open to collateral attack, unless the court acted without jurisdiction."

The case of *Houston v. Clark*, 36 Kan. 412, 13 Pac. 739, cited in this connection, was based upon a journal entry dismissing an action and rendering judgment for costs against plaintiff, and that was held to be such as could not be called in question in a subsequent suit.

The principal defendant in the suit at bar never regarded the action of the probate court as revoking his appointment as administrator, as shown by all the documents he signed before being removed from office. Collateral attacks have to have a judgment of a court before they can be held as such. See definitions in 34 C. J. 511 and 15 R. C. L. 838.

A number of cases are cited as bearing on this subject generally as to bondsmen not being liable for acts of the officer before giving the bond or for acts committed during a succeeding term of office, which need no comment whatever as being the rule universally accepted. The case of *Sparks v. Cherokee County*, 76 Kan. 280, 91 Pac. 89, is slightly different where the legislature did away with the

annual elections and directed that some officers should succeed themselves until the next election a year later, and it was held that a bond given for the conduct of the officer during his regular term would not be liable for the extra year, although the constitution provided that county officers should hold their offices for the term of two years and until their successors shall be qualified.

The following language from the syllabus in the case of *Toffler v. Kesinger*, 80 Kan. 549, 102 Pac. 1097, is urged by the appellees as particularly appropriate to the case at bar. It may be appropriate in more ways than one. It is as follows:

"An administrator with the will annexed died in office without having accounted for money which he had collected belonging to the testator's estate. His successor obtained judgment in the district court against his administrator for the sum found to be due. The judgment was presented, allowed and classified in the probate court as a claim against his estate, but no order was issued upon his administrator for its payment, and it was not paid. *Held,* such an order is not a condition precedent to recovery against the sureties on his bond." (Syl.)

We think the contention of the appellees, that the plaintiff is estopped to pursue this claim against Peterson and his bondsmen by the actions of some of the residuary legatees brought against Peterson as administrator with the will annexed, is not good. The authority cited is the Ewing case, where the lack of jurisdiction was involved by trying to maintain probate proceedings in the proper county, after having attempted to start them in another county, and it was the same party in both cases, which is very different from the facts in this case. And besides, all of these other cases were dismissed and there exists no double liability on that account.

Appellees claim that this action is barred by the two-year statute of limitations, counting the two years from December 8, 1932, the day final account was approved and order of distribution was made, to March 7, 1935, the date this third amended petition was filed. Appellees insist that this is really an action in tort, and the two-year statute must control. They refer to an expression in the reply as to a certain alleged action of the defendant Peterson being fraudulent concealment from the court. This is an action upon a contract and not one in tort. Appellees cite the case of *Ryus v. Gruble*, 31 Kan. 767, 3 Pac. 518, which was an action against a sheriff and his bondsmen to recover for a wrongful levy upon personal property, and it was there held that the two-year provision controlled.

The allegations in the petition in the case at bar unmistakably attempt to state a cause of action on a contract, and besides a tort

can be waived and the action be pursued on the contract only. There is considerable said about demurrers being filed and sustained to petitions filed earlier in this case and no appeals being taken from adverse rulings thereon. The first petition was filed November 27, 1933. We hold that the two-year statute does not apply in this case.

Appellees think there are two conflicting orders as to residuary legatees, and defendants are not in default while such condition exists. A study of the documents introduced shows a correction as to residuary legatees, and this defendant Peterson, as administrator, participated in the correction of allotment before the order of distribution was made.

The twelfth subdivision of the brief refers to the confusion as to title of administrator and the danger of having more than one because of such confusion. Appellees insist that R. S. 22-1002, 22-1003 and 22-1004 especially provide for the duties of administrators under circumstances similar to what are alleged in the pleadings in this case, and that the three sections do not mention an administrator *de bonis non* to sue on the bond when the circumstances are such that the legatees or creditors themselves may sue. R. S. 22-730 provides for the appointment of an administrator *de bonis non,* and in the recent opinion in the case of *Price v. Carmean,* 136 Kan. 744, 18 P. 2d 197, it was held that the legatees, or heirs in that case, were not the proper parties to recover but the administrator *de bonis non* was such proper party. The second paragraph of the syllabus in the case is as follows:

"Where an estate of a decedent is not fully administered by an administratrix, and it is claimed that she is withholding assets of the estate, the proper course of the heirs is to obtain the appointment of an administratrix *de bonis non* to collect any remaining assets and complete the administration of the estate, and the fact that the original administratrix had made a final settlement which had been approved and had secured her discharge does not preclude such an appointment."

The next two items in the appellees' brief, mainly concerning abatement of this action and failure of proof of appointment of administrator *de bonis non,* have both been considered and heretofore discussed. Plaintiff's exhibit 17 shows the appointment of the plaintiff as administrator *de bonis non.* From the authorities above cited it is evident that under the circumstances established by the evidence there was no other plain and adequate remedy for the plaintiff to acquire the remaining assets of the estate, and the method

pursued was, under the authorities above cited, the usual and approved way.

All the errors assigned by both defendants in their cross-appeal concern rulings of the trial court in the admission of evidence, and upon consideration such rulings are held not to have been erroneous.

The facts shown by the documentary evidence introduced and the law of the case are in favor of a judgment for the plaintiff against both defendants, and require a reversal of the judgment rendered for the defendants. The cause is therefore remanded with instructions to reverse the judgment heretofore rendered for defendants and render judgment for the plaintiff against both defendants for the balance of the assets of the estate, or $4,033.57, with interest and costs, and the trial court is directed to hear evidence as to the amount of a reasonable attorney fee for plaintiff's attorney in this case beginning with the filing of the third amended petition, and add such amount, together with the costs of this action, to the judgment in favor of plaintiff and against defendants. It is so ordered.